# PRICE *v.* JOHNSTON, WARDEN.

No. 111.   Argued December 16, 1947.—Decided May 24, 1948.

*Joseph L. Rauh, Jr.* argued the cause for petitioner. With him on the brief was *Irving J. Levy.*

*Frederick Bernays Wiener* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Quinn, Robert S. Erdahl* and *Beatrice Rosenberg.*

*Wayne M. Collins* filed a brief for the American Civil Liberties Union, as *amicus curiae,* urging reversal.

MR. JUSTICE MURPHY delivered the opinion of the Court.

The writ of *habeas corpus* has played a great role in the history of human freedom. It has been the judicial method of lifting undue restraints upon personal liberty. But in recent years the increased use of this writ, especially in federal courts, has created many procedural problems which are not easy of solution. This case involves some of those problems. Because of the importance of the writ and the necessity that it not lose its effectiveness in a procedural morass, we have deemed it wise to deal with this case at length and to set forth fully and explicitly the answers to the matters at issue.

In 1938, petitioner was convicted in a federal district court in Michigan under a four-count indictment charging violations of the federal bank robbery statute.[1] He was sentenced to imprisonment for 65 years and was com-

[1] 12 U. S. C. §§ 588b and 588c. Petitioner was charged with having (1) entered a federally insured bank with intent to rob, (2) robbed the bank by putting an employee in fear, (3) jeopardized

mitted to the United States Penitentiary at Alcatraz, California. His efforts to prosecute an appeal from his conviction proved futile.[2]

Since his confinement at Alcatraz, petitioner has made four separate applications for writs of *habeas corpus* in the United States District Court for the Northern District of California. The instant proceeding involves the fourth of these applications. Inasmuch as the problems in this case can best be understood in light of the issues raised in the earlier proceedings, it becomes necessary to examine the various applications in some detail.

1. The first application was prepared and filed in 1940 by petitioner, who is not a lawyer. He sought release mainly on the grounds that certain evidence used against him at the trial had been obtained in violation of the Fourth Amendment and that the trial judge had improperly refused to disqualify himself upon the filing of an affidavit of prejudice. It is important to note that this application did not allege that the conviction resulted from the prosecution's knowing use of false testimony. The District Court issued an order to show cause, a return was made, and the petitioner then filed a traverse in the form of a "Motion to overrule Respondent's return and issue writ." This motion likewise failed to aver the knowing use of false testimony. But it did call

the lives of a bank employee and others by the use of a dangerous weapon, and (4) kidnapped a bank employee in the course of such offense. Petitioner was found guilty as charged.

[2] His petition to the Sixth Circuit Court of Appeals for a writ of mandamus to require the trial judge to enter a decision on his application for an appeal was denied because "no application for appeal is pending before respondent or in the United States District Court for the Eastern District of Michigan." *Price* v. *Moinet*, 116 F. 2d 500. His petition in this Court for a writ of certiorari was denied because filed out of time, 311 U. S. 703; rehearing denied, 311 U. S. 729. Petitioner acted as his own counsel in these unsuccessful maneuvers.

the court's attention to "two different statements" made at the trial by the prosecution's chief witness, Fred T. Donner, and to the "methods . . . used to obtain" this change in testimony.[3]  There was no indication given as to what those "methods" were.  Donner's testimony at the trial was attached as an exhibit, testimony which revealed that Donner had gone to the office of the District Attorney and talked to him and his assistant during the interval between the allegedly conflicting statements.[4]

The District Court then appointed counsel for petitioner at his request.  Several months later, when the

---

[3] Point V of petitioner's motion stated: "Because the respondent shows falsely on the affidavit by Assistant United States Attorney John W. Babcock, respondent's Exhibit 'A', where he states that there was no determination of any one in said office of the United States Attorney to have him convicted falsely.  Petitioner calls the attention of this Honorable Court to the testimony of transcript of record at page 35 Second part.  Recross examination of the one and only witness that the government produced to testify that there had been a crime committed as charged in indictment #24629.  Petitioner's Exhibit 'A', testimony given by Fred T. Donner, and it will show just what methods was used to obtain two different statements from this witness."

[4] This testimony was brought out on recross examination of Donner by one of petitioner's attorneys.  Part of this colloquy was as follows:

"Q. Witness, perhaps I misunderstood your testimony this morning.  Did I understand you correctly to say that last night after you left here, you went up to the department of Justice, or the District Attorney's office, and you discussed your testimony?

"A. Yes, sir.

"Q. And whom did you discuss it with?

"A. With the District Attorney, and the assistant.

"Q. And after that discussion, you remembered some things that you have testified to this morning?

"A. I remembered them yesterday, but I just—I was nervous and forgot them.

⠀⠀⠀.⠀⠀⠀⠀.⠀⠀⠀⠀.⠀⠀⠀⠀.⠀⠀⠀⠀.

"Q. Well, my recollection and yours perhaps do not agree on it, but

matter came on for determination, the court entered an order denying the application for a writ of *habeas corpus* and dismissing the petition. No hearing was held, the order being entered solely on the basis of the pleadings. And no findings of fact or conclusions of law were made. Nor was an opinion written. Petitioner thereafter proceeded *pro se*. Among his various legal maneuvers, he moved for a rehearing. He stated, as grounds for the motion, that the court erred in refusing to allow him to appear and testify personally before entering the order and that the court-appointed attorney "blocked your petitioner from filing an amended petition to include additional points so that they could be reviewed on appeal." This motion was denied.

Petitioner prepared his own appeal to the Circuit Court of Appeals. Among the points upon which he stated he intended to rely was the claim that he had been denied "a fair and impartial trial" by Donner's change in testimony after talking with the District Attorney. But the Circuit Court of Appeals, in affirming the District Court's disposition of the *habeas corpus* petition, made no reference to this point; its opinion was devoted exclusively to the matters raised in the original petition. *Price* v. *Johnston*, 125 F. 2d 806.

Included in the numerous claims in his attempt to secure a writ of certiorari in this Court was the reiteration that Donner's change in testimony deprived him of a fair

---

the statements that you made yesterday were all true to the best of your recollection, were they not?

"A. Yes, sir.

"Q. And your conversations last night after you left the court didn't assist you in giving any testimony, did they?

"A. No, it did not, only that I had an opportunity, I wanted an opportunity to bring out something that I hadn't said.

"Q. Did it refresh your recollection?

"A. No, it just—there were just some things I didn't tell in my story, that is all."

and impartial trial. According to his written argument, "if this was not perjured it was base contradictory evidence for after this witness had completed all his evidence he was then taken into the private chambers of the United States Attorney . . . and there was instructed as to what to say, for he came from said office and was recalled to the stand at this second setting he rebutted all his prior testimony. This must be either classed as a conspiracy forcing a witness to change his testimony either of which surely would not be giving the appellant the fair and impartial trial to which he is entitled." The Government's memorandum in opposition dealt with this contention in a footnote. It was there said that petitioner's claim "is refuted by the excerpt from the transcript of the proceedings at the trial introduced as part of petitioner's pleadings. . . . The witness did not rebut his prior testimony but merely supplemented it with a few more details and he affirmatively stated that his discussion with the prosecutor did not assist him in his subsequent testimony." This Court denied the petition for a writ of certiorari. *Price* v. *Johnston,* 316 U. S. 677; rehearing denied, 316 U. S. 712.

2. In 1942, several months after the foregoing action by this Court, petitioner prepared and filed in the District Court a second petition for a writ of *habeas corpus.* In this petition he sought release on the same grounds set forth in his first petition as well as on two principal additional grounds. The two new claims were that petitioner's counsel had been absent from the courtroom during an important part of the trial and that petitioner had not had counsel at the preliminary hearing before the United States Commissioner. The petition, as amended, contained no allegation that false testimony had been knowingly used at the trial; nor did it refer in any way to Donner's allegedly inconsistent testimony. Moreover, no mention of such matters was made by petitioner

in his testimony at the hearing on the writ of *habeas corpus.*[5]

The District Court, at the close of the hearing, discharged the writ. Its findings of fact and conclusions of law were subsequently entered and were silent as to any question relating to the knowing use of false testimony. The District Court's action was affirmed on appeal, the opinion of the Circuit Court of Appeals being devoted to the matters decided by the District Court. *Price* v. *Johnston,* 144 F. 2d 260. This Court then denied a petition for certiorari, a petition which presented no issues differing from those raised in the lower courts. *Price* v. *Johnston,* 323 U. S. 789; rehearing denied, 323 U. S. 819.

3. Petitioner's third petition for a writ of *habeas corpus* was denied by the District Court on August 22, 1945. This denial was based on the ground that the issues raised were known to petitioner when he filed the earlier petitions, making the third petition an abusive use of the writ of *habeas corpus. Price* v. *Johnston,* 61 F. Supp. 995.[6] Leave to appeal was denied. It is not evident, however, what the issues were that petitioner did raise in this proceeding.

---

[5] The lawyer who had represented petitioner in connection with the first application withdrew and another was appointed in his place by the District Court to serve petitioner in the second proceeding. This lawyer filed an amended petition for the writ of *habeas corpus.* The writ issued, there was a hearing at which petitioner's counsel was present, a further amendment of the petition was allowed, and testimony was taken. Petitioner gave evidence on his own behalf at this hearing. In prosecuting his appeal from the District Court's action, petitioner once more acted *pro se.*

[6] The District Court's opinion, after briefly stating the background of the case, reads as follows:

"Petitioner alleges 'that the questions now raised was not raised in the prior petitions No. 23268–W and 10.671.R.' However, these matters were known to petitioner when he filed the petitions in 23268–W and 23721–R. If petitioner intended to rely on these

4. On January 2, 1946, petitioner filed his fourth application for a writ of *habeas corpus*. He alleged that he had been denied a fair and impartial trial in that, on the trial for bank robbery, the jury was confused by the presentation of evidence to show perjury before a notary public, that the court was not justified in imposing a general sentence on the four counts of the indictment, and that the fourth count did not allege an offense. After an order to show cause was issued, petitioner amended his petition to allege "That the government knowingly employed false testimony on the trial, to obtain the conviction."

The respondent warden, through the United States Attorney, thereupon filed his return to the order to show cause. This return did not deny the allegation that the Government knowingly employed false testimony at the trial. Nor did it question the sufficiency of the allegation or the absence of supporting facts. It simply incorporated by reference the entire record in the three prior *habeas corpus* proceedings and asked that the fourth petition be denied on the basis of the District Court's opinion denying the third application.[7] Petitioner's trav-

matters he should have urged them in 23268–W. 'To reserve them for use in a later proceeding "was to make an abusive use of the writ of habeas corpus." ' Swihart v. Johnston, 9 Cir., 1945, 150 F. 2d 721.

"Since upon the face of the petition petitioner is not entitled to the writ, Walker v. Johnston, 312 U. S. 275, 284 . . . the petition for writ of habeas corpus is denied."

[7] The Government's memorandum of points and authorities, filed with the return, merely quoted the District Court's opinion denying the third petition for a writ of *habeas corpus, Price* v. *Johnston,* 61 F. Supp. 995 (see footnote 6, *supra*). The memorandum then concluded: "Respondent, in reliance on the decision of Judge St. Sure and the authorities which he cites, respectfully urges that the petition for writ of habeas corpus should be denied and the order to show cause, heretofore issued, discharged."

erse stated that the earlier petitions did not contain some of the points presented in the fourth petition. It repeated the allegations in the original petition, though it merely incorporated by reference the allegation of the amended petition that the prosecutor knowingly used false testimony.

The District Court denied the fourth petition without a hearing and without opinion. It is difficult to discover from such action the precise basis of the District Court's dismissal of the allegation in question. But because of the nature of the warden's return, we suspect that the court thought that the matter was known to petitioner at the time of filing the first petition and should have been urged at that time. There is nothing whatever to indicate that the dismissal stemmed from the court's belief that the allegation was insufficient on its face or that it was obviously without merit.

On appeal, a panel of the Ninth Circuit Court of Appeals ordered up the original files in petitioner's three previous applications and directed that petitioner be brought before the court for the argument of his appeal. After the argument, the submission of the cause was set aside and the case was assigned for hearing before the court *en banc*. Petitioner then moved the court *en banc* for an order directing his appearance for the reargument. This motion was denied on January 6, 1947. In its written opinion, a majority of the court held that circuit courts of appeals are without power to order the production of a prisoner for the argument of his appeal in person. One judge expressed the view that the court had such power, but concurred in the denial of the motion as a matter of discretion. Two judges dissented, stating that there was power to grant the requested relief; but they did not reach the question of the propriety of exercising that power in this case. 159 F. 2d 234.

The appeal was then considered on the merits on briefs filed by petitioner and respondent[8] and on oral argument by an Assistant United States Attorney. Petitioner was unrepresented at the oral argument. On May 5, 1947, the order of the District Court denying the fourth petition without a hearing was affirmed, two judges dissenting in separate opinions. 161 F. 2d 705.

The majority opinion of the Circuit Court of Appeals pointed out that, by amending his fourth petition to allege "that the government knowingly employed false testimony on the trial, to obtain conviction," petitioner had interposed a wholly new ground for discharge. But the specific circumstances of this claim had not been developed in the District Court. The opinion accordingly treated the allegation as though it had incorporated petitioner's explanatory statement in his appellate brief that the United States Attorney, in the course of the trial, "did take the one and only witness, Donner, that testified that there had been a crime committed, from the witness stand after he had testified that he could not see any guns or pistols during the robbery, to the district attorney's office, and talked about the evidence and put the witness Donner back on the witness stand to testify that he did see the pistols, and described them, when he could not do so at first."

So construing the allegation, the court then said: "The records in these several proceedings disclose that throughout his trial appellant was represented by counsel of his

___

[8] The Government's brief in the Circuit Court of Appeals again was devoted solely to a quotation of the District Court's opinion denying the third petition. See footnote 7, *supra*. It concluded with the following statement: "Appellee is in accord with the reasoning of Judge St. Sure and the authorities cited in his memorandum and order denying appellant's third application for a writ of habeas corpus, and hereby adopts them *in toto* as his argument on this appeal to sustain the Court below in its decision denying appellant's fourth application for a writ of habeas corpus in our case at bar."

own choosing. And since he was himself present at all times he could hardly have been unaware of the described incident or of its implications, nor does he make any such claim. On the face of his showing it is apparent he knew as much about the misconduct at the time it is said to have occurred as he knows now. Yet no reason or excuse is attempted to be advanced for his failure to set it up in one or the other of his prior petitions." 161 F. 2d at 706–707. And it was further stated that "Where there have been repeated petitions with an apparent husbanding of grounds the onus may properly be cast on the applicant of satisfying the court that an abusive use is not being made of the writ." *Id.*, at 707. Since petitioner had given no valid excuse for failing to present earlier the allegation in question, the conclusion was reached that the District Court did not abuse its discretion in denying the fourth petition without a hearing. Reference was made in this respect to *Salinger* v. *Loisel,* 265 U. S. 224, and *Wong Doo* v. *United States,* 265 U. S. 239.

We issued a writ of certiorari to review the important issues thus raised in the two opinions of the Circuit Court of Appeals. And on petitioner's motion, we appointed a member of the bar of this Court to serve as his counsel before us.

## I.

We hold that power is resident in a circuit court of appeals to command that a prisoner be brought before it so that he may argue his own appeal in a case involving his life or liberty. That power, which may be exercised at the sound discretion of the court, grows out of the portion of § 262 of the Judicial Code, 28 U. S. C. § 377, which provides that "The Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective juris-

dictions, and agreeable to the usages and principles of law."

An order requiring the presence of a prisoner before a circuit court of appeals to argue his own appeal is one in the nature of a writ of *habeas corpus*. As such, it clearly falls within the scope of § 262. Basic to the power of a circuit court of appeals to issue a writ of *habeas corpus* under that section, of course, is the pendency of a proceeding of an appellate nature to which the contemplated writ is auxiliary. *Whitney* v. *Dick*, 202 U. S. 132. The writ cannot be issued by that court as an independent and original proceeding; it can only issue where it may be necessary to the complete exercise of an appellate jurisdiction already existing. Since the occasion for demanding the presence of a prisoner at an oral argument would arise only where there was an appeal already pending before the court, a writ compelling his presence satisfies this basic requirement of § 262.

Moreover, a writ of *habeas corpus* of this nature can on occasion be "necessary" for the exercise of appellate jurisdiction so as to be authorized by § 262. We have refused to interpret that section to mean that a circuit court of appeals can issue a *habeas corpus* writ only if "necessary" in the sense that the court could not otherwise physically discharge its appellate duties. *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 273. Rather, § 262 has been read so that the writ may be issued where its use is calculated, in the sound judgment of the circuit court of appeals, to achieve the ends of justice entrusted to it. In other words, the writ is available in those exceptional cases "where, because of special circumstances, its use as an aid to an appeal over which the court has jurisdiction may fairly be said to be reasonably necessary in the interest of justice." *Id.,* at 274.

Exceptional situations may arise where a circuit court of appeals might fairly conclude that oral argument by a prisoner in person is "reasonably necessary in the interest of justice." True, an appeal can always be submitted on written briefs. But oral argument, while not indispensable, is frequently if not usually desired by the parties. And there are occasions when a court deems it essential that oral argument be had; indeed, a court order or request to that effect may be necessary where the parties have previously indicated a willingness to forego the privilege. In such situations where oral argument is slated to take place, fairness and orderly appellate procedure demand that both parties be accorded an equal opportunity to participate in the argument either through counsel or in person. The difficulty, of course, arises when one of the parties is a prisoner who has no lawyer and who desires that none be appointed to represent him, being of the belief that the case is of such a nature that only he himself can adequately discuss the facts and issues. Since ordinarily the court cannot designate counsel for the prisoner without his consent, an arrangement that is made for his presence and participation at the oral argument can be said to be "reasonably necessary in the interest of justice." Otherwise the court loses the benefits of listening to his contentions, hearing only the arguments of government counsel. Conceivably, the prisoner's case might be unduly prejudiced by such a one-sided debate. That the argument orally advanced by the prisoner may in fact be less than enlightening to the court does not detract from the fairness or the justness of giving him the opportunity to appear and argue. Thus if a circuit court of appeals is satisfied in other respects that the prisoner should be produced at the argument, a writ designed to effectuate that production is plainly "necessary" within the contemplation of § 262.

It remains to be seen whether a writ of *habeas corpus* for the purpose under consideration is "agreeable to the usages and principles of law," as that phrase is used in § 262. At common law there were several variants of the writ of *habeas corpus*. See 3 Blackstone's Commentaries \*129–132; *Ex parte Bollman,* 4 Cranch 75, 97–98.[9] None of them, however, seems to have been devised for the particular purpose of producing a prisoner to argue

---

[9] Blackstone describes the following common law versions of the *habeas corpus* writ:

(1) *Habeas corpus ad respondendum.* Issued "when a man hath a cause of action against one who is confined by the process of some inferior court; in order to remove the prisoner, and charge him with this new action in the court above."

(2) *Habeas corpus ad satisfaciendum.* Issued "when a prisoner hath had judgment against him in an action, and the plaintiff is desirous to bring him up to some superior court to charge him with process of execution."

(3) *Habeas corpus ad prosequendum, testificandum, deliberandum,* etc. Issued "when it is necessary to remove a prisoner, in order to prosecute or bear testimony in any court, or to be tried in the proper jurisdiction wherein the fact was committed."

(4) *Habeas corpus ad faciendum et recipiendum.* This "issues out of any of the courts of Westminster hall, when a person is sued in some inferior jurisdiction, and is desirous to remove the action into the superior court; commanding the inferior judges to produce the body of the defendant, together with the day and cause of his caption and detainer, (whence the writ is frequently denominated an *habeas corpus cum causa,*) to *do and receive* whatsoever the king's court shall consider in that behalf."

(5) *Habeas corpus ad subjiciendum.* The "great and efficacious writ," which is "directed to the person detaining another, and commanding him to produce the body of the prisoner, with the day and cause of his caption and detention, *ad faciendum, subjiciendum, et recipiendum,* to do, submit to, and receive whatsoever the judge or court awarding such writ shall consider in that behalf."

Chief Justice Marshall examines the first four of these writs in their relation to the American judicial system in *Ex parte Bollman,* 4 Cranch 75, 97–98.

his own appeal. Nor does it appear that the courts of England have used or developed the *habeas corpus* writ for this purpose.[10]

However, we do not conceive that a circuit court of appeals, in issuing a writ of *habeas corpus* under § 262 of the Judicial Code, is necessarily confined to the precise forms of that writ in vogue at the common law or in the English judicial system. Section 262 says that the writ must be agreeable to the usages and principles of "law," a term which is unlimited by the common law or the English law. And since "law" is not a static concept, but expands and develops as new problems arise, we do not believe that the forms of the *habeas corpus* writ authorized by § 262 are only those recognized in this country in 1789, when the original Judiciary Act containing the substance of this section came into existence. In short, we do not read § 262 as an ossification of the practice and procedure of more than a century and a half ago. Rather it is a legislatively approved source of procedural instruments designed to achieve "the rational ends of law." *Adams* v. *United States ex rel. McCann, supra,* 273.

We accordingly look to the usages and principles which have attached themselves to the writ of *habeas corpus*

----

[10] The courts of England have long considered themselves powerless to issue a *habeas corpus* writ to enable a prisoner to defend himself in another proceeding or to argue motions in the trial court. *Benns* v. *Mosley,* 2 C. B. (N. S.) 116; *Weldon* v. *Neal,* 15 Q. B. D. 471. See also *Attorney General* v. *Hunt,* 9 Price 147; *Ford* v. *Nassau,* 9 M. & W. 793; *Rex* v. *Parkyns,* 3 B. & Ald. 679; *Attorney General* v. *Cleave,* 2 Dowl. P. C. 668; *Ex parte Cobbett,* 3 H. & N. 155; *Clark* v. *Smith,* 3 C. B. 982. But the specific problem of whether a prisoner can be produced to argue in person his own appeal under circumstances like those present in the instant case does not appear to have a precise answer in English law.

down through the years to the present time. The historic and great usage of the writ, regardless of its particular form, is to produce the body of a person before a court for whatever purpose might be essential to the proper disposition of a cause. The most important result of such usage has been to afford a swift and imperative remedy in all cases of illegal restraint upon personal liberty. With that usage, a writ for the purpose under consideration is entirely agreeable and consistent. To order the production of a prisoner before an appellate court to argue his own appeal in a case in which he alleges that he is illegally imprisoned is to perform an act which is intimately and necessarily related to the presentation of the merits of the prisoner's complaint, a presentation which is essential if relief from the allegedly illegal imprisonment is to be secured. Such production, as we have seen, may in some circumstances be essential to the proper disposition of the case on appeal. Where that is the case, a writ in the nature of *habeas corpus* to achieve that production is agreeable to the usages of law.

Moreover, the principle has developed that the writ of *habeas corpus* should be left sufficiently elastic so that a court may, in the exercise of its proper jurisdiction, deal effectively with any and all forms of illegal restraint. The rigidity which is appropriate to ordinary jurisdictional doctrines has not been applied to this writ. The fluidity of the writ is especially desirable in the setting of a statute where Congress has given circuit courts of appeals the power to issue the writ in aid of their appellate jurisdiction wherever "reasonably necessary in the interest of justice." The ordinary forms and purposes of the writ may often have little relation to the necessities of the appellate jurisdiction of those courts. Justice may on occasion require the use of a variation or a modification

of an established writ. It thus becomes essential not to limit appellate courts to the ordinary forms and purposes of legal process. Congress has said as much by the very breadth of its language in § 262. It follows that we should not write in limitations which Congress did not see fit to make.

Formulation of the limitations of § 262 which do exist must await the necessities of appellate jurisdiction in particular cases. It is enough for the present to note that where those necessities are such as to require the presence of a prisoner to argue his own appeal, the issuance of a writ of *habeas corpus* for that purpose is "agreeable to the usages and principles of law" so as to be sanctioned by § 262. Only in that way can we give substance in this case to our previous statement that "dry formalism should not sterilize procedural resources which Congress has made available to the federal courts." *Adams* v. *United States ex rel. McCann, supra,* 274.

We therefore conclude that circuit courts of appeals do have the power under § 262 of the Judicial Code to issue an order in the nature of a writ of *habeas corpus* commanding that a prisoner be brought to the courtroom to argue his own appeal. That power has heretofore been assumed. *Schwab* v. *Berggren,* 143 U. S. 442, 449; and see *Goldsmith* v. *Sanford,* 132 F. 2d 126, 127; *Donnelly* v. *State,* 26 N. J. Law 463, 472, affirmed, 26 N. J. Law 601. We now translate that assumption into an explicit holding.

In so deciding, however, we emphasize that the power of a circuit court of appeals to issue such a writ is discretionary. And this discretion is to be exercised with the best interests of both the prisoner and the government in mind. If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of the

prison,[11] that he is capable of conducting an intelligent and responsible argument, and that his presence in the courtroom may be secured without undue inconvenience or danger, the court would be justified in issuing the writ. But if any of those factors were found to be negative, the court might well decline to order the prisoner to be produced. Section 262, in other words, does not justify an indiscriminate opening of the prison gates to allow all those who so desire to argue their own appeals.

The discretionary nature of the power in question grows out of the fact that a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate court. *Schwab* v. *Berggren, supra.* The absence of that right is in sharp contrast to his constitutional prerogative of being present in person at each significant stage of a felony prosecution,[12] see *Hopt* v. *Utah,* 110 U. S. 574, and *Snyder* v. *Massachusetts,* 291 U. S. 97, and to his recognized privilege of conducting his own defense at the trial. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U. S. C. § 394, to parties in all the courts of the United States to "plead and manage

---

[11] The Circuit Court of Appeals below felt that the production of prisoners to argue their own appeals might lead to "the widespread abuse of the writ . . . , not to mention the items of fruitless burden and expense. To the legitimate hope of release by legal means would be added inducements not so legitimate; for temporary relief from prison confinement is always an alluring prospect, and to the hardened criminal the possibility of escape lurks in every excursion beyond prison walls." 159 F. 2d at 237.

[12] But see *Bell* v. *United States,* 129 F. 2d 290; *Barber* v. *United States,* 142 F. 2d 805.

their own causes personally." To the extent that this section permits parties to conduct their own oral arguments before appellate courts, it must be modified in its application to prisoners. Oral argument on appeal is not an essential ingredient of due process and it may be circumscribed as to prisoners where reasonable necessity so dictates.

A prisoner's right to participate in oral argument on appeal is accordingly to be determined by the exercise of the discretionary power of the circuit court of appeals under § 262. The court below erred in holding that no such power existed. But since the case must go back to the District Court for further proceedings, it is unnecessary here to remand the case to the Circuit Court of Appeals to exercise the discretionary power which rightfully belongs to it.

## II.

We hold that petitioner's fourth petition for a writ of *habeas corpus,* alleging the knowing use of false testimony to obtain his conviction, was improperly dismissed by the District Court.

The Government argues before us that the allegation in question, as presented to the District Court, is a mere allegation of law unsupported by reference to any specific facts. As such, the allegation is said to be fatally deficient and to warrant summary denial. Reference is made in this respect to *Cuddy, Petitioner,* 131 U. S. 280, 286; *Kohl* v. *Lehlback,* 160 U. S. 293, 299; *United States* v. *Ju Toy,* 198 U. S. 253, 261; *Collins* v. *McDonald,* 258 U. S. 416, 420–421; *Hodge* v. *Huff,* 78 U. S. App. D. C. 329, 331, 140 F. 2d 686, 688; and *Long* v. *Benson,* 140 F. 2d 195, 196.

But this proposition was apparently not presented to or passed upon by the District Court; nor was it deter-

mined by the Circuit Court of Appeals. The sole complaint made by the Government in the lower courts, and the main one raised before us, relates to petitioner's alleged abuse of the writ of *habeas corpus.* A consideration of that factor is preliminary as well as collateral to a decision as to the sufficiency or merits of the allegation itself. We accordingly address ourselves solely to the alleged abuse of the writ, leaving the Government free to press its objections to the adequacy of the allegation after the proceedings are renewed before the District Court.

The Circuit Court of Appeals, as we have noted, treated the bare allegation of the knowing use of false testimony as having incorporated the explanatory statement in petitioner's appellate brief. Whether such an expanded allegation states a sufficiently specific violation of due process within the meaning of *Mooney* v. *Holohan,* 294 U. S. 103, is a question which we need not now answer. Nor is it necessary here to decide the propriety of treating a statement in an appellate brief as an amplification of an allegation in the trial court, a practice to which the Government makes objection.

But in dealing with the alleged abuse of the writ of *habeas corpus,* we find it undenied that the explanatory statement illuminates the allegation made in the District Court. The statement makes clear the incident to which petitioner had reference when he alleged the knowing use of false testimony. In other words, the essence of petitioner's charge is that the prosecution brought undue pressure to bear on the Government's chief witness, Donner, to change his testimony and that this altered testimony was knowingly used to obtain petitioner's conviction. Cf. *Pyle* v. *Kansas,* 317 U. S. 213, 215–216. The issue now is whether petitioner has so abused the writ of *habeas corpus* as to bar a consideration of this allega-

tion, whether it be general or specific in form or whether it be supported or unsupported by factual references.

From the facts which we have previously detailed it is evident that this allegation was not properly raised prior to the amendment of the fourth petition. None of the three prior petitions had made this point. In the first proceeding, it is true, petitioner's traverse to the warden's return called the court's attention to the differing statements allegedly made by Donner and claimed that certain undefined "methods" had been used to obtain the change in testimony. Petitioner was apparently trying to raise the due process issue formulated in *Mooney* v. *Holohan, supra.* But his effort was without success. A mere claim that a witness gave inconsistent testimony is not enough to charge the prosecution's knowing use of false testimony; it may well be that the witness' subsequent statements were true, in which event the claim of inconsistency is not a constitutional objection. Since this due process issue was not properly raised, we cannot assume that the District Court's action in dismissing the first petition on the pleadings was a determination against petitioner on the merits of the issue.

Further elaboration of the Donner incident was made by petitioner in the course of seeking review of the District Court's action on the first petition. Both in the Circuit Court of Appeals and in this Court he claimed that he had been denied a fair and impartial trial by Donner's alleged shift in testimony; and in this Court he stated that there had been a conspiracy to force Donner to change his story. It is noteworthy that the Government did not see fit to deny or controvert petitioner's claim until the case reached this Court. We need not decide whether the due process issue was properly raised in the review proceedings, inasmuch as petitioner's failure to make a proper allegation in that respect in the District

Court foreclosed any determination of the matter. And as we have noted, the second and third petitions for *habeas corpus* were completely silent as to this due process issue.

There has thus been no proper occasion prior to the fourth proceeding for a hearing and determination by the District Court as to the allegation that the prosecution knowingly used false testimony to obtain a conviction. That fact renders inapplicable *Salinger* v. *Loisel,* 265 U. S. 224, upon which reliance was placed by the Circuit Court of Appeals. It was there held that, while *habeas corpus* proceedings are free from the *res judicata* principle, a prior refusal to discharge the prisoner is not without bearing or weight when a later *habeas corpus* application raising the same issues is considered. But here the three prior applications did not raise the issue now under consideration and the three prior refusals to discharge petitioner can have no bearing or weight on the disposition to be made of the new matter raised in the fourth petition. *Waley* v. *Johnston,* 316 U. S. 101.

Likewise irrelevant to the instant proceeding is *Wong Doo* v. *United States,* 265 U. S. 239. In that case, the petitioner set forth two grounds for discharge in his first petition. At the hearing, he offered no proof in support of the second ground. The petition was dismissed on the theory that the first ground was not good in law. A subsequent *habeas corpus* petition relied entirely on the second ground alleged in the first petition. This Court held that the petitioner had had full opportunity to offer proof as to the second point at the hearing on the first petition, proof which was accessible at all times. If he was intending to rely on that ground, good faith required that he produce his proof at the first hearing. "To reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive

use of the writ of *habeas corpus*. No reason for not presenting the proof at the outset is offered." 265 U. S. at 241.

The *Wong Doo* case thus involved a situation where one has properly raised an issue in an earlier petition, has received a full opportunity at a hearing to present evidence on the point, and has refused to avail oneself of that opportunity. The distinguishing features in the instant case are obvious.

There is one factor in this case that might be thought to justify the dismissal of the fourth petition as an abusive use of the *habeas corpus* writ. That factor is that petitioner had prior knowledge of the Donner incident which forms the basis, at least in part, of the due process allegation now being made. The record in the first proceeding shows that petitioner's own lawyer elicited the information from Donner that he had talked with the prosecuting lawyers during the interlude between the allegedly conflicting statements. And petitioner made reference to that information during the course of the first *habeas corpus* proceeding in the manner heretofore described. Petitioner now utilizes that same information in alleging that the prosecution made a knowing use of false testimony.

In the first place, however, we cannot assume that petitioner has acquired no new or additional information since the time of the trial or the first *habeas corpus* proceeding that might indicate fraudulent conduct on the part of the prosecuting attorneys. As Judge Denman stated in his dissenting opinion below, 161 F. 2d at 708–709: "The gravamen of the misconduct charged is not the fact that the witness changed his testimony but that the prosecuting attorney knowingly caused the witness to give the false testimony. All the accused and his attorney knew at the trial was that the single prosecuting

witness changed his testimony. Obviously this in itself does not warrant a charge of fraud. That it was fraudulently done by persuasion of the prosecuting attorney could only have been learned after conviction and after the convicted man was in the penitentiary."

Whether petitioner does or does not have any new information is a matter unrevealed by anything before us or before the Circuit Court of Appeals. It is a matter which should be determined in the first instance by the District Court. And it is one on which petitioner is entitled to be heard either at a hearing or through an amendment or elaboration of his pleadings. Appellate courts cannot make factual determinations which may be decisive of vital rights where the crucial facts have not been developed. Cf. *Kennedy* v. *Silas Mason Co.*, 334 U. S. 249.

In the second place, even if it is found that petitioner did have prior knowledge of all the facts concerning the allegation in question, it does not necessarily follow that the fourth petition should be dismissed without further opportunity to amend the pleadings or without holding a hearing. If called upon, petitioner may be able to present adequate reasons for not making the allegation earlier, reasons which make it fair and just for the trial court to overlook the delay. The primary purpose of a *habeas corpus* proceeding is to make certain that a man is not unjustly imprisoned. And if for some justifiable reason he was previously unable to assert his rights or was unaware of the significance of relevant facts, it is neither necessary nor reasonable to deny him all opportunity of obtaining judicial relief.

Moreover, we do not believe that the burden was on the petitioner of affirmatively alleging in the first instance that he had acquired new information or that he had adequate reasons for not raising sooner the issue

of the knowing use of false testimony. It was enough if he presented an allegation and supporting facts which, if borne out by proof, would entitle him to relief. Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in *habeas corpus* proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession. Especially is this true in a case like this where the imposition of those standards would have a retroactive and prejudicial effect on the prisoner's inartistically drawn petition. Cf. *Holiday* v. *Johnston,* 313 U. S. 342, 350; *Pyle* v. *Kansas, supra,* 216; *Tomkins* v. *Missouri,* 323 U. S. 485, 487; *Rice* v. *Olson,* 324 U. S. 786, 791–792.

And so if the Government chooses not to deny the allegation or to question its sufficiency and desires instead to claim that the prisoner has abused the writ of *habeas corpus,* it rests with the Government to make that claim with clarity and particularity in its return to the order to show cause. That is not an intolerable burden. The Government is usually well acquainted with the facts that are necessary to make such a claim. Once a particular abuse has been alleged, the prisoner has the burden of answering that allegation and of proving that he has not abused the writ. If the answer is inadequate, the court may dismiss the petition without further proceedings. But if there is a substantial conflict, a hearing may be necessary to determine the actual facts. Appropriate findings and conclusions of law can then be made. In this way an adequate record may be established so that appellate courts can determine the precise basis of the district court's action, which is often shrouded in ambiguity where a petition is dismissed without an expressed reason. And the prisoner is given a fairer oppor-

tunity to meet all possible objections to the filing of his petition.

It is obvious that the procedure followed in the District Court in the instant proceeding precluded a proper development of the issue of the allegedly abusive use of the *habeas corpus* writ. The Government's response to the order to show cause was too indefinite and vague to give petitioner a fair opportunity to meet this important issue. Merely quoting the court's opinion in the third *habeas corpus* proceeding was not enough to require petitioner to explain his reasons for failing to present earlier his allegation as to the knowing use of false testimony. And the court either failed or was unable to delineate the issue by making specific findings and conclusions of law or by explaining its view of the matter in a written opinion.

We are not unaware of the many problems caused by the numerous and successive *habeas corpus* petitions filed by prisoners.[13] But the answer is not to be found in repeated denials of petitions without leave to amend or without the prisoners having an opportunity to defend against their alleged abuses of the writ. That only encourages the filing of more futile petitions. The very least that can and should be done is to make *habeas corpus* proceedings in district courts more meaningful and decisive, making clear just what issues are determined and for what reasons.

To that end, we reverse the judgment below and remand the instant case to the District Court for further proceedings consistent with this opinion. We do not hold that the District Court, on remand, must grant the fourth *habeas corpus* petition if it is unsupported and unsub-

---

[13] See discussions in *Dorsey* v. *Gill,* 80 U. S. App. D. C. 9, 148 F. 2d 857; Goodman, "Use and Abuse of the Writ of Habeas Corpus," 7 F. R. D. 313; Note, 61 Harv. L. Rev. 657.

stantiated; nor do we hold that a hearing must now be held on the merits of the allegation in question. Rather the case must be developed further in light of the principles discussed herein. The Government is free to amend its return to bring into focus whatever abuse of the writ of *habeas corpus* it thinks petitioner has committed. And the petitioner is free to answer such charge as may be made in that respect, the burden being on him to show that he is entitled at this late date to make the allegation as to the knowing use of false testimony. The District Court may then dispose of the matter on the pleadings or order that a hearing be had to develop the facts. If the court eventually determines that petitioner has not abused the writ, the allegation of the knowing use of false testimony should be decided as to its sufficiency and its merits. But in any event the court should make explicit its determination of the preliminary problem of the abusive use of the writ.

*Reversed and remanded.*

Mr. Justice Frankfurter, dissenting.

I agree with the views of Mr. Justice Jackson that, in the light of all the long-drawn-out prior proceedings, the two lower courts justifiably found the fourth petition for *habeas corpus* in this case without merit on its face. It is not too much to ask the petitioner to state, however informally, that his fourth petition is based on newly discovered matter, or, in any event, on a claim that he could not fairly have been asked to bring to the court's attention in his three prior petitions. Such a requirement certainly does not narrow the broad protection which the writ of *habeas corpus* serves. I also agree with his general attitude against a prisoner being brought from Alcatraz—or any other federal prison—to argue his own case

on appeal. My difference with him is that I would not bolt the door to such an undesirable practice, as a matter of law, but merely leave it as a rigorous rule of practice. The power to depart from this rule ought not to be wholly foreclosed, even though opportunity for its exercise is left for contingencies not easily foreseeable.

The office of the writ of *habeas corpus* precludes definitive formulation of its limitations precisely because it is the prerogative writ available for vindicating liberties. See *Sunal* v. *Large,* 332 U. S. 174, 184, 187. Therefore, I would not preclude the use of the writ to bring a convict before a circuit court of appeals where circumstances in the interests of justice make his presence compelling. See *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 272–75. It is a very different thing to judge the use of the writ for the purpose of having an incarcerated petitioner argue his own case on appeal by the ordinary standards of judicial discretion. To acknowledge such power in the circuit courts of appeals implies too broad an authority, in that the abuse of its exercise in granting the writ is too narrow a basis for review. A general rule should preclude the use of the writ for the purpose of taking a prisoner out of confinement merely to argue his own case on appeal from dismissal of a petition for *habeas corpus* after conviction. Every legitimate right of such a prisoner can be safeguarded by means much more consonant with the fair and seemly and wise administration of justice.

The Chief Justice and Mr. Justice Reed join in this dissent.

Mr. Justice Jackson, dissenting.

I cannot agree that the District Court erred in dismissing this unsupported and unsubstantiated fourth *habeas corpus* petition, whether his action in so doing was

based on its obvious lack of merit or on the prisoner's abuse of the writ. Nor can I agree that appearance of a prisoner merely to argue his case is "necessary for the exercise" of the jurisdiction of the Court of Appeals and "agreeable to the usages and principles of law" as is required by § 262 of the Judicial Code, 28 U. S. C. § 377.

This case is typical of many based on repeated *habeas corpus* petitions by the same prisoner.[1] This petitioner is serving a long term for armed bank robbery. Confinement is neither enjoyable nor profitable. And it is safe to assume that it neither gives rise to new scruples nor magnifies old ones which would handicap petitioner's preparation of one *habeas corpus* application after another. If the trial court rules one set of allegations deficient, concoction of another set may bring success. Under this decision, failure to allege the most obvious grounds in earlier applications, or to support them with facts in

---

[1] Petitioner was convicted of armed bank robbery in April, 1938. After that date, and prior to the filing of this current *habeas corpus* petition, he took the following steps seeking his liberty:

1. In 1940, petitioned the Court of Appeals for mandamus to force the trial judge to act on an application for appeal; that court found no such application was then pending and denied the petition; this Court denied certiorari, 311 U. S. 703, and a rehearing, 311 U. S. 729.

2. In 1940, filed an application for *habeas corpus*. After argument by court-appointed counsel, the application was dismissed. The Court of Appeals affirmed, 125 F. 2d 806; this Court denied certiorari, 316 U. S. 677, and denied rehearing, 316 U. S. 712, the latter decision being announced June 1, 1942.

3. On September 24, 1942, filed another *habeas corpus* petition. After hearing, participated in by court-appointed counsel, the petition was dismissed. The Court of Appeals affirmed, 144 F. 2d 260; this Court denied certiorari, 323 U. S. 789, and denied rehearing, 323 U. S. 819, the latter decision being announced on January 29, 1945.

4. Prior to August 22, 1945, filed third *habeas corpus* petition, which was denied on that date, 61 F. Supp. 995.

The current petition was filed in January, 1946.

a later petition, is not fatal. The number of times the Government must re-try the case depends only on the prisoner's ingenuity, industry and imagination. This prisoner, in his fourth petition in eight years, has now gotten around to charging that, at his trial in 1938, the Government knowingly employed false testimony to obtain the conviction. This issue substantially involves a retrial of the original conviction after more than ten years have passed by, memories are blurred, evidence is lost, and parties dispersed. The petition is unaccompanied by any particulars supporting this most serious charge against the court and responsible officers of the law. The prisoner, of course, has nothing to lose in any event. Perjury has few terrors for a man already sentenced to 65 years' imprisonment for a crime of violence. Even such honor as exists among thieves is not too precious to be sacrificed for a chance at liberty. Consequently, his varying allegations can run the gamut of all those perpetuated in the pages of the United States Reports.

The Court now holds that such irresponsible, general, unsupported and belated accusations must be tried out; further, the District Judge erred in that he did not request the perennial petitioner to fill in details, the absence of which, under established rules, justified his dismissal of the petition actually filed. I think that the Government should not be required to go to trial (or rather, retrial) on a case of this kind, unless the petitioner, without prompting or solicitation by the court, alleges with particularity conduct which would be sufficient, if proved, to entitle him to release. If he does not have such facts, he is doomed ultimately to fail; if he does have them, he should not be permitted to force the court and the Government into further litigation until he has disclosed them. And certainly it is not too much to require that on a fourth petition, eight years after conviction, the petitioner must also set forth facts which will excuse

his failure to raise his question in earlier petitions instead of at a period so remote from his trial.

Moreover, if any one of petitioner's applications and accompanying facts convince the trial judge that a hearing on the merits is justified, the prisoner's presence in the trial court, to testify, may fairly be said to be necessary. The procedure for bringing him before that court to give his evidence is of ancient origin. But it is another and quite different matter to say that a layman's presence, solely to take part in a legal argument on a settled record, is necessary for the exercise of the jurisdiction of the appellate court. The only suggested authority for so ordering a jailer to fetch a prisoner to argue his own appeal is § 262 of the Judicial Code, 28 U. S. C. § 377, which provides that "the Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute," and if the statute stopped here, the Court might have some basis for its action. But the section adds, "which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

Even if the Court of Appeals, or this Court, believed that the former should have the power to summon prisoners for argument of their appeals, that is not the issue. The issue is, can the requirements of the statute be met? Is the prisoner's presence merely to argue his case "necessary for the exercise" of the appellate court's jurisdiction? I think it is far-fetched to so hold.[2] Such courts

_____

[2] It is a very different thing to find the presence of the prisoner "necessary" under such circumstances as in *Adams* v. *U. S. ex rel. McCann*, 317 U. S. 269, 274, where this Court explained the necessity as follows:

"The circumstances that moved the court below to the exercise of its jurisdiction were the peculiar difficulties involved in preparing a

may, and usually do, appoint counsel for a prisoner who cannot obtain one for himself. If there is more that the defendant himself wants to present, it can always be done in writing. Many cases are decided in appellate courts solely on written briefs. But the Court fears that some prisoners like this one may not only refuse counsel but also wish not to rest on a written brief. Under the statute, however, it is not the convenience or the egotism of the prisoner that confers power to grant a writ—it is the *necessity* of the writ for the exercise of the Court's jurisdiction. It is difficult for me to believe that prisoners, whom the Court so often forgives for violating all rules of pleading and procedure on the ground of lay ignorance, can be a necessary source of light and leading to an appellate court. The absence of such a necessity is, I suppose, the reason why no such writ has been known to the law until today's revelation, and why the statute does not allow it. But the Court by this decision makes it proper for any prisoner, whose appeal from either conviction or denial of any one of his multitudinous petitions for *habeas corpus* is before the Court of Appeals, to insist that he be transported to that court to argue the case and to demand a ruling by the court on that issue as well as on the merits. This seems to open the gate to new and fruitless litigation.

---

bill of exceptions. The stenographic minutes had never been typed. The relator claimed that he was without funds. Since he was unable to raise the bail fixed by the trial judge, he had been in custody since sentence and therefore had no opportunity to prepare a bill of exceptions. The court doubted 'whether any [bill] can ever be made up on which the appeal can be heard . . . In the particular circumstances of the case at bar, it seems to us that the writ is "necessary to the complete exercise" of our appellate jurisdiction because . . . there is a danger that it cannot be otherwise exercised at all and a certainty that it must in any event be a good deal hampered.' "

Admittedly, the statute's second requirement, *viz:* that the writ be "agreeable to the usages and principles of law," cannot be met. It is apparent that the latter clause is a limitation on the earlier sweeping grant of power. *Ex parte Bollman and Swartwout,* 4 Cranch 75, 99. The Circuit Courts of Appeals are statutory courts and must look to a statutory basis for any jurisdiction they exercise. But in this case the Court is authorizing a complete overriding of the limitation Congress has seen fit to impose. The Court's opinion points out that employment of the writ of *habeas corpus* for this purpose has never been a usage or principle of the common law. No statutory or decisional [3] basis for such a usage or

---

[3] The Court says that it "translates" the "assumption," found in one decision of this Court, one of a Court of Appeals, and one of a state court, into a specific holding that the Circuit Courts of Appeals do have this power. The *dictum* in *Schwab* v. *Berggren,* 143 U. S. 442, 449 is merely this: ". . . But neither reason nor public policy require that he shall be personally present pending proceedings in an appellate court whose only function is to determine whether, in the transcript submitted to them, there appears any error of law to the prejudice of the accused; especially, where, as in this case, he had counsel to represent him in the court of review. We do not mean to say that the appellate court may not, under some circumstances, require his personal presence; but only that his presence is not essential to its jurisdiction to proceed with the case." In *Goldsmith* v. *Sanford,* 132 F. 2d 126, cert. den. 318 U. S. 762, rehearing denied 318 U. S. 799, the Court said: ". . . We know of no precedent for taking a prisoner from the penitentiary that he might be present to argue in person his appeal from an adverse judgment on habeas corpus. . . . If there be power to order the removal which was requested, discretion was well exercised in refusing it." In *Donnelly* v. *State,* 26 N. J. Law 463, affirmed, 26 N. J. Law 601, which could hardly be even persuasive here, the Court held that the prisoner's presence was not necessary for jurisdiction, nor was it required as a technical necessity or a matter of right.

The "translation" of these "assumptions" into a holding involves, under this statute, a decision that these three isolated statements

principle is cited. Yet, ignoring the limitations of this very statute, the Court concludes that the writ can just be issued anyway. I cannot subscribe to this sort of statutory "construction."

This is one of a line of cases by which there is being put into the hands of the convict population of the country new and unprecedented opportunities to re-try their cases, or to try the prosecuting attorney or their own counsel, and keep the Government and the courts litigating their cases until their sentences expire or one of their myriad claims strikes a responsive chord or the prisoners make the best of increased opportunities to escape. I think this Court, by inflating the great and beneficent writ of liberty beyond a sound basis, is bringing about its eventual depreciation.[4]

---

represent the "usages and principles of law." Those terms have been in the statute since the original Judiciary Act of 1789, and the Court admits there was no such usage or principle prior to that time. These three later cases are therefore the only shadow of a basis for holding that a writ such as the Court now directs meets the requirements of the statute. To consider such unauthoritative sources as a precedent on this point would be bad enough—but to enlarge them to a usage or principle of law is even less warranted. Reliance on these isolated pronouncements, which, either individually or collectively, are far from being authority on this point, seems close to creating precedents out of thin air.

[4] Such depreciation has already set in. See Goodman, "Use and Abuse of the Writ of Habeas Corpus," 7 F. R. D. 313, stating, at page 315, that from June 1937 to June 1947 6 prisoners in Alcatraz filed a total of 68 petitions, while 57 others filed 183 petitions. See also Dorsey v. Gill, 80 U. S. App. D. C. 9, 148 F. 2d 857, stating (862–863) that in one five-year period one prisoner filed 50 petitions in the District Court for the District of Columbia; four others filed 27, 24, 22 and 20, respectively; and 119 prisoners filed 597 petitions, an average of 5 each.