SIMONES v. HUMPHREY, Warden.

Habeas Corpus No. 222.

District Court, M. D. Pennsylvania.

Aug. 19, 1948.

Petitioner pro se..

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., and Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., for respondent.

FOLLMER, District Judge.

Petitioner has applied for his second writ of habeas corpus. He now alleges that "False testimony was allowed to be given in the case in the sentencing Court," that a crime not a misdemeanor cannot be prosecuted on an Information, and that he "was trapped into believing that his course of action in the Court should be to waive an indictment and be prosecuted on an Information."

The question of false testimony was raised in his previous petition.[1] It was further developed at this hearing. While serving a sentence at Chillicothe for mail theft,[2] he attempted to escape, which he does not deny, and it was for that offense an Information (with Waiver of Indictment) was filed and to which he plead guilty.[3]

He has another case pending, on a detainer, at the reformatory in western New York (evidently for violation of parole at that institution).[4]

About April, 1946, he was sentenced to three years on the original violation.[5] On July 15, 1947, he was given a consecutive sentence of three years for the attempted escape. It is this last sentence of which he complains. The Transcript of the Record[6] reports the prosecuting attorney's statement, after the plea of guilty had been entered, as being:

"United States v. Warren Eugene Simones. This particular case is one of the new escapees. This defendant and two others, Kept and Pope got together and concocted a scheme to escape by using a bar on one of the windows. The other two got away but Simones dropped to the second floor and did not escape from the institution itself. The assistant warden is here and can tell us about it."

The Assistant Warden (the transcript again having the names as "Pope" and "Kept") amplifies the other statement by " * * * this man Simones in dropping to the ground sprained his ankle and was found at the fence line. He gave himself up at that time because he was unable to go any further." Petitioner's contention is that the correct names of the two other prisoners implicated, and who actually escaped, were "Paquette" and "Probe,"[7] and that he intended to give himself up. Counsel who was prosecuting the case, and the Assistant Warden, certainly knew the names and the error is probably a stenographer's error in transcribing, but assuming the names were actually mispronounced, certainly this did not constitute a denial of due process,[8] nor could it in any event conceivably have influenced the sentence.

As to the waiving of an indictment, this Court does not question the constitutionality of Rule 7 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687. Moreover, the record shows that the prosecuting attorney asked wheth-

---

[1] Records having been introduced at hearing held on first petition, judicial notice thereof was taken at this (second petition) hearing. Craemer v. State of Washington, 168 U.S. 124, 129, 18 S.Ct. 1, 42 L.Ed. 407; Rookard v. Huff, 79 U.S. App.D.C., 291, 145 F.2d 708.

[2] H.C. No. 218, Transcript of Testimony, Page 4.

[3] H.C. No. 222, Transcript of Testimony, Page 4.

[4] H.C. No. 218, Transcript of Testimony, Page 7.

[5] H.C. No. 218, Transcript of Testimony, Pages 4 and 5.

[6] Respondent's Exhibit No. 1 in H.C. No. 218 (reoffered at this hearing).

[7] H.C. No. 222, Transcript of Testimony, Page 8.

[8] Price v. Johnston, 68 S.Ct. 1049. 92 L.Ed. ——.

er he had the money or means to employ an attorney and inquired, "Do you desire the Court to appoint a lawyer for you without cost to you?" and the court further so advised him.[9] He was fully informed as to the effect of a Waiver of Indictment.[10] The charge was repeated to him and before imposing sentence the court inquired, "Have you anything to say?" to which he replied, "No, sir."[11] We can find no denial of due process here.

■ As to his new allegation concerning entrapment, this was not mentioned in the first habeas corpus[12] and his testimony at the present hearing was very vague.[13]

As to a statement given to an agent of the Federal Bureau of Investigation, there is no question on the facts before me that he made such statement admitting his part in the affair, voluntarily, without any threats or promises of any kind, nor did petitioner at the hearing, when questioned for details, deny this fact or contend that his plea was in any respect forced.[14]

■ The petition for writ of habeas corpus is accordingly dismissed and the rule to show cause issued thereon discharged.[15]

---

[9] Respondent's Exhibit No. 1 in H.C. No. 218 (Transcript of proceedings filed in Criminal Case No. 5474, Southern District of Ohio, Eastern Division, Pages 1 and 2):

"The Court: Do you understand the Nature of the charge: A. Yes sir.

"The Court: Do you understand you have a constitutional right to have the court appoint counsel for you if you have not the means to employ counsel? A. Yes sir.

"The Court: Do you want the Court to appoint counsel for you or not? A. No sir."

[10] Respondent's Exhibit No. 1 in H.C. No. 218 (Transcript of proceedings filed in Criminal Case No. 5474, Southern District of Ohio, Eastern Division, Page 2):

"Mr. Windom: The United States proposes to file a criminal information charging you with attempting to escape from the reformatory at Chillicothe. You have a constitutional right to have this matter investigated by a Federal Grant (sic) Jury and an indictment returned by that body if they so elect, but under the new criminal rules you can waive being indicted by a grand jury and have the matter presented immediately or directly to the Court; what do you desire to do: A. I would like to be sentenced.

"The Court: Do you want your case presented to a grand jury for investigation? A. No sir.

"The Court: Do you waive having it presented to a grand jury? A. I will waive the grand jury."

[11] Respondent's Exhibit No. 1 in H.C. No. 218, (Transcript of proceedings filed in Criminal Case No. 5474, Southern District of Ohio, Eastern Division).

[12] At the first habeas corpus hearing (No. 218) he was asked: "Is there anything else you would like to bring up? A. Not that I know of."

[13] H.C. No. 222, Transcript of Testimony, Page 6, e. g.:

"* * * What has happened since the first hearing that has given you this idea of coercion; who put that into your head? A. I have been reading a few law books. As I understand it you cannot waive an indictment.

"Q. Where did you get the idea of this coercion? That was not suggested at the first hearing at all. You didn't get that out of the books. That you were trapped into believing that the course of action would be so and so. A. When I was delivered to the State Prison, the next day I was brought into Court and sentenced and everything without a preliminary hearing."

[14] H.C. No. 222, Transcript of Testimony, Pages 4 and 5.

"Q. * * * There is no question but what you committed a crime which you were charged with by a formal information, to which you plead 'Guilty'. Do you deny that now? Did anyone force you to do that? A. No sir.

"Q. Were there any promises made, of any sort? A. No sir.

"Q. No promises, no threats, no duress; it was purely voluntary? A. Yes sir.

"Q. If you have any other statements you want to make, go ahead. A. I don't imagine there is anything further."

[15] While not raised at the hearing, it is noted that at the hearing on the first petition on April 2, 1948, a statement was made (H.C. No. 218, Page 4) that "He actually has not been serving sentence for escape." The record also shows he was originally sentenced (on the mail theft charge) in April, 1946, to a term of three years. Even without loss of the good time (under 18 U.S.C.A. § 710) he would still be serving the original sentence and his petition would be premature.