**Bennie MITCHELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7050.**

United States Court of Appeals Tenth Circuit.

Aug. 2, 1962.

---

---

No appearance for appellant.

John W. Raley, Jr., Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., was with him on the brief), for the United States.

Before PHILLIPS, BREITENSTEIN and SETH, Circuit Judges.

PHILLIPS, Circuit Judge.

Mitchell was charged by indictment with the theft of postage stamp stock of a value in excess of $2,042.80, $47 in cash and 126 blank postal money order forms in violation of 18 U.S.C. § 641. He entered a plea of not guilty, was tried to a jury, was convicted and was sentenced to imprisonment for a term of two years.

Throughout the arraignment, entry of the plea, the trial and the sentence proceedings, Mitchell was represented by a court-appointed lawyer, fully competent and of long experience in the defense of persons charged with crime. The evidence adduced by the Government fully warranted the jury in finding these facts:

Naomi Eunice Boyter, on August 16, 1961, was the contract postmaster at Post Office Station No. 11, located at 10 North Walnut Street, Oklahoma City, Oklahoma. She closed the Post Office Station at 5:00 p. m., August 15, and locked the doors. She left the cash, stamp stock and blank money orders in a locked safe in the Post Office Station. When she returned to the building in which the Post Office Station was maintained on the morning of August 16, she discovered that the rear door of the building, which she had left locked, was broken down and that the safe was gone. A sheet of 15 cent United States Air Mail Stamps was introduced in evidence. Those stamps were a collector's item. A collector had expressed a desire to purchase the stamps and had written his name in the upper corner of the sheet and Mrs. Boyter had written her initials in the margin of such sheet of stamps. Mrs. Boyter was able to and did identify such sheet of stamps.

Robert A. Rogan and D. L. Johnson, on the morning of August 16, broke into the building in which the Post Office Station was located. They removed the safe from the building and placed it in a driveway at the rear of the building. They then went to an area approximately four blocks away, where Rogan's car was parked. They were unable to start the car and they then went to Mitchell's place at the corner of Second and Central Streets in Oklahoma City. They told Mitchell they had a post office safe and asked him if he would go with them and help them start the car and get the safe and Mitchell stated that he would. They went to the car and succeeded in starting it. Mitchell then drove the car to the Post Office Station building. Rogan and Johnson loaded the safe in the car. Mitchell remained in the driver's seat. Mitchell then drove the car to the home of Johnson's mother near Spencer, Oklahoma, and about 20 miles distant from Oklahoma City. Johnson wanted to open the safe at his mother's house. Mitchell and Rogan objected, but finally agreed. They arrived at Johnson's mother's home at about 3:00 a. m. Johnson went into his mother's home and Mitchell and Rogan got the safe and carried it into the middle room of the house. They succeeded in opening the safe by striking it with an axe. All three of them took turns wielding the axe. They found $37 in cash in the safe. They divided the money three ways and each of them gave Johnson's mother $1 to clean up "the mess that we had made." They put the postage stamps and money order blanks in a sack and put the safe back in the car. They dumped the safe in a pasture about a mile or mile and a half from the Johnson house. When they got back to

Oklahoma City, Johnson took the stamps. The next day Mitchell told Rogan that Johnson had the stamps.

One Charlie M. Starks operated a billiard hall at 221 North Central Street, Oklahoma City, Oklahoma. Mitchell was a customer of Starks. On August 16 or 17, Mitchell went to the billiard hall, asked Starks if he would like to make a deal for some property, took Starks to a room across the street from the billiard hall, showed Starks some sheets of stamps, stamped envelopes and money order blanks, and asked Starks what he "would give for them." Starks told Mitchell he did not think he wanted to "fool with it." Starks then contacted J. C. Lankford, a postal inspector, and Lankford made arrangements with Starks to purchase the property from Mitchell. Later on the same day, Mitchell met Starks on the street and asked him what he was going to do about purchasing the property. Starks replied he thought he would "take it." Starks and Mitchell then went to the same room where he saw the property during the morning of the day. Starks then gave Mitchell $100 in cash and took possession of the property. Starks delivered the property to Lankford on August 17, 1961, and Lankford reimbursed him for the $100 he had paid Mitchell. The sheet of stamps which had been identified by Mrs. Boyter was a part of the stamps which Starks purchased from Mitchell and turned over to Lankford.

While the events that took place on the morning of August 16, up to the time that Mitchell, Rogan and Johnson returned to Oklahoma City, in large part rested on the testimony of Rogan, an accomplice, what took place at the Johnson home was fully corroborated by Johnson's mother.

Mitchell admitted that he accompanied Rogan and Johnson to the home of Johnson's mother and returned with them to Oklahoma City. He testified that he went along only to drive the car and did not participate in the commission of the crime or receive any of the fruits thereof.

The court's charge was complete and in all respects correct. It included a proper charge on aiding and abetting in the commission of an offense and a proper charge on the testimony of an accomplice. It instructed the jury that the testimony of an accomplice should be received with caution and weighed with great care. There were no exceptions to the charge. Mitchell filed a brief in his own behalf.

The matter was set for hearing in the Court of Appeals on July 11, 1962. On July 6, 1962, Mitchell filed a motion in which, in effect, he requested the court to enter an order permitting him to appear before the Court of Appeals on July 11, 1962, and argue the case in his own behalf. The United States Attorney and John W. Raley, Jr., Assistant United States Attorney for the Western District of Oklahoma filed a brief and the latter appeared and made a brief oral argument in behalf of the United States.

The effect of Mitchell's argument in his brief is that the offense was committed by Rogan and Johnson and that he did not participate in the offense, or receive any of the fruits of the crime.

After carefully reviewing the record, which contains all of the proceedings below from the arraignment to the sentencing, inclusive, we were of the opinion that the evidence fully supported the verdict returned by the jury and that the trial proceedings were entirely free from error.

■ This court has power under 28 U.S.C. § 1651 to issue an order in the nature of a writ of habeas corpus, commanding that a prisoner be brought to the courtroom to argue his own appeal. Price v. Johnston, 334 U.S. 266, 284, 68 S.Ct. 1049, 92 L.Ed. 1356. The power, however, is discretionary. After an examination of the record and the brief filed by Mitchell, we were of the opinion that Mitchell, on this record, would be incapable of conducting an intelligent argument that would be either helpful to him or to this court. Accordingly, we denied the motion of Mitchell that he be brought before this court to argue

his own appeal and took the case as submitted on the briefs and oral argument of counsel for the United States. See Price v. Johnston, 334 U.S. 266, 284, 285, 68 S.Ct. 1049, 92 L.Ed. 1356.

Since in our opinion the verdict was fully supported by the evidence and the proceedings in the court below were free from error, the judgment is affirmed.