UNITED STATES of America

v.

John P. WALTERS.

Crim. No. K–80–00013.

United States District Court,
D. Maryland.

May 12, 1980.

Russell T. Baker, Jr., U.S. Atty., and D. Christopher Ohly, Asst. U.S. Atty., Baltimore, Md., for United States of America.

No attorney of record at that time for defendant.

FRANK A. KAUFMAN, Chief Judge.

Defendant is indicted under 26 U.S.C. § 7203 and 18 U.S.C. § 2 for wilful failure to file income tax returns. The Government seeks Orders from this Court directed to two telephone companies, requiring them to produce telephone records of defendant's mother and defendant's former employer. An arrest warrant has been issued for defendant, but defendant's arrest has not yet been effected. The Government alleges that it has learned that defendant has made a number of long distance collect telephone calls to his mother and to his former employer over the past several months and contends that the telephone records sought to be produced "may well contain relevant information concerning the present location of defendant Walters, and may assist the Marshal's Service and this Court in bringing Walters promptly to trial."[1]

One of the two telephone companies, Mountain Bell, has apparently informed the Government that it will produce the long distance telephone records of defendant's former employer only in response to a judicial subpoena. It is not clear as to whether the other telephone company, Pacific Northwest Bell, has similarly refused to turn over the telephone records of defendant's mother absent a Court Order. The Government takes the position that this Court has the power to order the two telephone companies to produce the records in question, pursuant to one or more of: Federal Criminal Rule 17(c); the All Writs Act, 28 U.S.C. § 1651; or the Court's inherent powers.[2]

## RULE 17(c)

Federal Criminal Rule 17(c) provides in relevant part:

> * * * The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

That rule is available to the Government as well as to defendants. *See, e.g., U.S. v. Eli Lilly & Co.,* 24 F.R.D. 285 (D.N.J.1959); *U.S. v. Gross,* 24 F.R.D. 138 (S.D.N.Y.1959). However, contrary to the Government's position, Rule 17(c) may not be used for the production of the type of documents or records sought herein.

Discovery in a criminal case is governed by the provisions of Federal Criminal Rule 16. The records involved herein do not fall within the scope of Rule 16. Accordingly, the Government is seemingly attempting to obtain under Rule 17(c) what it cannot obtain under Rule 16. The case law and treatise authority suggest that

---

1. That information has not been submitted under oath or in such form as to enable this Court to determine probable cause related to any possible violation by defendant of 18 U.S.C. § 1073. *See* the discussion *supra* at 730.

2. Statutory and/or regulatory provisions such as those which relate to "mail cover," 39 C.F.R. § 233.2, *see U.S. v. Choate,* 576 F.2d 165 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978), are seemingly not in existence with regard to what might be called "telephone cover."

such a use of a Rule 17(c) subpoena is inappropriate.

The seminal case[3] construing the purpose and scope of Rule 17(c) is *Bowman Dairy Company v. United States,* 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). In *Bowman,* Mr. Justice Minton wrote (at 220, 71 S.Ct. at 679):

> It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. * * * Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials. (emphasis in original.)

Earlier (at 219–20, 71 S.Ct. at 678) the Justice noted that Rule 17(c) is limited to evidentiary materials:

> * * * No good reason appears to us why [the documents] may not be reached by subpoena under Rule 17(c) *as long as they are evidentiary.* This is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a good-faith effort be made to obtain evidence. (emphasis added.)

In *United States v. Murray,* 297 F.2d 812, 821 (2nd Cir.) *cert. denied,* 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962), Chief Judge Lumbard wrote:

> * * * [W]e interpret Bowman as saying that Rule 17(c) is a device solely for the obtaining of evidence for the use of the moving party, permitting him to examine the material obtained before trial only where, in the discretion of the court, it is necessary that he do so in order to make use of the material as *evidence.* (emphasis added.)[4]

The records sought herein are not evidentiary documents covered by Rule 17(c). In-

deed, the Government has candidly conceded in written presentations to this Court that "the relevancy and admissibility of subpoenaed toll records at trial is questionable" and that "the evidentiary value of the telephone toll information at trial is not very great ...." Rather, the Government seeks the telephone records in order to help federal law enforcement officials locate and apprehend the defendant, not for any evidentiary purpose at trial. Rule 17(c) is therefore not of aid to the Government in this case at this time.

## THE ALL WRITS ACT

The All Writs Act, 28 U.S.C. § 1651(a) provides as follows:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

In support of its argument under that statute, the Government relies on *United States v. New York Telephone Co.,* 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). Therein, the District Court, after finding probable cause to believe that certain telephones were being used to conduct illegal gambling activities, issued an Order authorizing FBI agents to install and use pen registers to monitor the use of the telephones, and directing the telephone company to furnish those agents with the facilities and technical assistance necessary to use the pen registers. The telephone company moved to vacate part of that latter portion of the pen register order.

The Supreme Court upheld the District Court's power to authorize the installation of the pen registers pursuant to Federal Criminal Rule 41(b). At that time, that Rule stated in relevant part as follows:

---

**3.** *See* the reference in *United States v. Nixon,* 418 U.S. 683, 698, 94 S.Ct. 3090, 3102, 41 L.Ed.2d 1039 (1974) to *Bowman* as the "leading case."

**4.** *See also, U.S. v. Schembari,* 484 F.2d 931, 936 (4th Cir.1973); *U.S. v. James,* 423 F.2d 991, 1006 (5th Cir.1970); 2 Orfield, *Criminal Proce-*

*dure Under The Federal Rules,* § 17:91, at 677: "The words 'offered in evidence' [in Rule 17(c)] imply that the material requested is actually evidentiary, as opposed to those records 'material to the preparation of his defense' set out in Rule 16."

A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense.[5]

Mr. Justice White concluded (at 169, 98 S.Ct. at 370):

* * * This authorization [that set forth in Rule 41(b) ] is broad enough to encompass a "search" designed to ascertain the use which is being made of a telephone suspected of being employed as a means of facilitating a criminal venture and the "seizure" of evidence which the "search" of the telephone produces. Although Rule 41(h) defines property "to include documents, books, papers and any other tangible objects," it does not restrict or purport to exhaustively enumerate all the items which may be seized pursuant to Rule 41. Indeed, we recognized in *Katz v. United States,* 389 U.S. 347 [88 S.Ct. 507], 19 L.Ed.2d 576 (1967), which held that telephone conversations were protected by the Fourth Amendment, that Rule 41 is not limited to tangible items but is sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause. 389 U.S. at 354–356, and n. 16 [88 S.Ct. at 512–514 and n. 16], 19 L.Ed.2d 576. See also *Osborn v. United States,* 385 U.S. 323, 329–331 [87 S.Ct. 429, 432–33], 17 L.Ed.2d 394, 87 S.Ct. 429 (1966). (footnotes omitted.)

Mr. Justice White went on to hold that the District Court also had the authority, pursuant to the All Writs Act, to order the telephone company to provide technical assistance in the installation of the pen registers. In reversing the Court of Appeals on that latter point, the Justice commented (at 172–73, 98 S.Ct. at 372):

We agree that the power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed. We conclude, however, that the order issued here against respondent was clearly authorized by the All Writs Act and was consistent with the intent of Congress.

*   *   *   *   *   *

The assistance of the Company was required here to implement a pen register order which we have held the District Court was empowered to issue by Rule 41. This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained: "This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve "the rational ends of law." ' " *Harris v. Nelson,* 394 U.S. 286, 299 [89 S.Ct. 1082, 1090], 22 L.Ed.2d 281 (1969), quoting *Price v. Johnston,* 334 U.S. 266, 282 [68 S.Ct. 1049, 1058], 92 L.Ed. 1356, 68 S.Ct. 1049 (1948). Indeed, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 273 [63 S.Ct. 236, 239], 87 L.Ed. 268, 63 S.Ct. 236, 143 A.L.R. 435 (1942). (footnote omitted.)

The Government contends herein that the "assistance of the telephone companies subpoenaed in this case, which would be required under the orders sought by the Government, is far less onerous than that required in New York Telephone Co." (Memo at 5). Thus, the Government seem-

---

5. Rule 41(b) was amended in 1979 to add a new subsection (4). Thus, under the present Rule, a warrant may also be issued "to search for and seize any: * * * (4) person for whose arrest there is probable cause, or who is unlawfully restrained."

ingly suggests that if the District Court in *New York Telephone Co.* had the authority under the All Writs Act to order the telephone company to assist in the installation of the pen registers, then the Court herein has the authority under the All Writs Act to order the telephone companies to turn over the phone records in question. That argument is unpersuasive.

In the *New York Telephone* case, there was probable cause to believe that the telephone lines in question were being used for a criminal purpose, as part and parcel of the gambling operation. Accordingly, the District Court had power to authorize the installation of the pen registers under Rule 41(b)(3) which covers the issuance of a warrant to "search for and seize any ... (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense." Only after concluding that the District Court was empowered to issue the pen register order under Rule 41 did the Supreme Court uphold the lower court's power to order the telephone company to provide assistance in implementing the Order, under the All Writs Act.

█ In the within case, by contrast, there is no allegation that defendant has used the telephone for the purpose of committing the offenses for which he has been indicted—wilful failure to file income tax returns. Accordingly, unless the government can, pursuant to some criminal statute such as 18 U.S.C. § 1073 (Flight to Avoid Prosecution or Giving Testimony), show probable cause to believe that defendant used or is using the phones in furtherance of a federal offense, such as flight to avoid apprehension, it does not appear that this Court has the authority under Rule 41(b)(3) to order the production of the telephone records in question.

█ While the Government has not to date so contended, it might be argued that this Court has the power to order the production of the telephone records under Rule 41(b)(4), the provision added to the rule in

1979.[6] Under that provision, a warrant may be issued to "search for and seize any ... (4) person for whose arrest there is probable cause ...." This Court has not found any case which discusses that recent amendment. However, the Advisory Committee Notes concerning that 1979 amendment include the following:

That part of the amendment which authorizes issuance of a search warrant to search for a person to be arrested is also consistent with ALI Model Code of Pre-Arraignment Procedure § SS 210.3(1)(d) (Proposed Official Draft, 1975), which states that a search warrant may issue to search for "an individual for whose arrest there is reasonable cause." As noted in the Commentary thereto, id. at p. 507, it is desirable that there be "explicit statutory authority for such searches." Some state search warrant provisions also expressly provide for the issuance of a search warrant to search for a person to be arrested. See, e.g., Del.Code Ann. tit. 11, § 2305 ("Persons for whom a warrant of arrest has been issued"). This part of the amendment to Rule 41 covers a defendant or witness for whom an arrest warrant has theretofore issued, or a defendant for whom grounds to arrest exist even though no arrest warrant has theretofore issued. It also covers the arrest of a deportable alien under 8 U.S.C. § 1252, whose presence at a certain place might be important evidence of criminal conduct by another person, such as the harboring of undocumented aliens under 8 U.S.C. § 1324(a)(3).

But, even if the provisions of Rule 41(b)(4) are broad enough to encompass the type of order requested by the Government herein, this Court seemingly would not have jurisdiction to issue such an order. Federal Criminal Rule 41(a) states:

(a) Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record *within the district wherein the property or person sought is located,* upon request of a

---

**6.** *See* note 5, *supra*, p. 729.

federal law enforcement officer or an attorney for the government. (emphasis added.)

Thus even if Rule 41(b)(4) is applicable, a question which this Court does not answer herein, the Government must, if it desires to proceed thereunder, seek such an order in a judicial forum in Utah and/or Oregon, the districts wherein the property sought is allegedly located, and not in this Court.[7]

 In the *New York Telephone Co.* case, the Supreme Court expressly declined to decide whether the pen register order could have been authorized under Federal Criminal Rule 57(b). That Rule provides:

> (b) Procedure Not Otherwise Specified. If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.

In discussing Rule 57(b) in *New York Telephone,* Mr. Justice White stated (at 170, 98 S.Ct. at 871):

> Our conclusion that Rule 41 authorizes the use of pen registers under appropriate circumstances is supported by Fed. Rule Crim.Proc. 57(b), which provides: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." Although we need not and do not decide whether Rule 57(b) by itself would authorize the issuance of pen register orders, it reinforces our conclusion that Rule 41 is sufficiently broad to include seizures of intangible items such as dial impulses recorded by pen registers as well as tangible items.

Since, as discussed supra (at 730–731), Rule 41(a) expressly provides that a search warrant may be issued only by a judicial officer in the district in which the property sought is located, it would seemingly be inconsistent with Rule 41(a) if this Court issued the

order requested by the Government herein pursuant to Rule 57(b).

For the reasons set forth *supra,* this Court declines to enter the Orders sought herein by the Government.[8]

<hr>

**7.** If Rule 41(b)(3) were applicable, which it is not for the reasons discussed *supra* at 730, the "wrong judicial forum" problem would still exist.

**8.** If this Court had the authority to order the telephone records to be produced, such an or-

der would seemingly *not* raise any Fourth Amendment problems. *Cf., Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), holding the use of a pen register not to constitute a "search" within the meaning of the Fourth Amendment.