# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian O'Toole,           :
         Petitioner     :
          :
       v.          :
          :
Pennsylvania Department     :
of Corrections,          :    No. 228 M.D. 2018
       Respondent   :    Submitted: June 22, 2018


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COVEY                            FILED: October 16, 2018

Before this Court are the Pennsylvania Department of Corrections' (Department) preliminary objections in the nature of a demurrer (Preliminary Objections) to Brian O'Toole's (O'Toole) pro se Amended Petition for Review (Petition) in the nature of a complaint in mandamus[1] filed in this Court's original jurisdiction.

## Background

O'Toole is incarcerated at the State Correctional Institution (SCI) at Fayette (SCI-Fayette). According to the Petition and the documents attached thereto, on March 26, 2018, the Department's Executive Deputy Secretary for Institutional Operations together with the Deputy Secretaries for the Eastern and Western Regions, issued a memorandum to inmates setting forth its new policy regarding Timberland and Rocky boots, as follows:

---

[1] Although designated a Petition for Writ of Mandamus, the ad damnum clause includes a request for injunctive relief.

Effective immediately, Timberland and Rocky boots are no longer permitted to be purchased by inmates.

Inmates that have these boots or any other manufacturers procured previously in their possession will have until **Friday, May 11, 2018** to make arrangements to send them home or turn them in. Inmate boot orders that were placed prior to the suspension of boot sales on February 21, 2018 and that have not been received/issued will be returned to the vendor upon receipt. The inmate will receive a full refund for the cost of the boots. Any boots found after Friday, May 11, 2018 will be considered contraband.

. . . .

Inmates that [sic] state[-]issued boots are unavailable through [Pennsylvania Correctional Industries (] CI[)] due to sizing and have been issued a boot or walking shoe in place of the standard issue state brown boots may retain those issued boots/shoes unless the boots are Timberland or Rocky boots. If they are Timberland or Rocky boots, they will be replaced with a security-approved shoe or boot.

The Department will be working with CI in the coming weeks to offer a significant increase in the variety of sneakers being offered.

Petition Attachment 1 (March 26, 2018 Memorandum).

On April 2, 2018, O'Toole filed a Form DC-135A (Inmate's Request to Staff Member) seeking a pre-deprivation hearing before his Timberland boots were confiscated. *See* Petition Attachment 2. On April 3, 2018, O'Toole's request was denied with the notation: "Read DC[-]ADM 815 [(Personal Property, State[-]Issued Items, and Commissary/Outside Purchases) (DC-ADM 815).[2]]" Petition Attachment 2.

---

[2] The DC-ADM 815 sets forth the Department's policy, *inter alia*, on prisoner footwear. It specifies that inmates will receive one state-issued pair of shoes that remain in the inmate's possession and, where necessary for special work assignments, protective equipment including boots that the work supervisor will keep. *See* DC-ADM 815 Policy Manual (Manual) at 1-1, 1-4. Inmates are also permitted to purchase boots from the commissary, but may only possess two pairs of boots at any one time. *See* Manual at 3-3. Section 3 of the Manual prohibits inmates from

2

## Facts

On April 5, 2018, O'Toole filed the Petition, claiming that his boots are being illegally confiscated without due process and in violation of the Department's policy DC-ADM 815.[3]  On April 24, 2018, the Department filed the Preliminary Objections contending that O'Toole's Petition fails to state a due process claim because he does not have a protected interest in the confiscated property.[4]  O'Toole opposed the Department's Preliminary Objections.

## Discussion

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom.  The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion.  In order to sustain

---

possessing contraband, which "is defined as any item possessed by an inmate . . . that is . . . expressly prohibited by those legally charged with the administration and operation of the facility[.]"  Manual at 3-4.

[3] On April 13, 2018, O'Toole also filed a Petition to Open Peremptory Judgment on grounds that if his boots are confiscated, he will lose the $92.65 purchase price, without having proper access to the courts.  On April 24, 2018, the Department objected to O'Toole's Petition to Open Peremptory Judgment because the Court has not entered any judgment.  On May 3, 2018, this Court denied O'Toole's Petition to Open Peremptory Judgment and further ordered: "In the event that [the Department] confiscates [O'Toole's] boots, [the Department] shall not destroy [them] pending this [C]ourt's disposition of this matter."  May 3, 2018 Order.

[4] On April 24, 2018, the Department filed an application to stay proceedings in the following cases involving the same issue: *Thomas v. Dep't of Corr.* (Pa. Cmwlth. No. 224 M.D. 2018); *Cook v. Exec. Deputy Sec'y of Pa. Dep't of Corr.* (Pa. Cmwlth. No. 249 M.D. 2018); *Pittman v. Pa. Dep't of Corr.* (Pa. Cmwlth. No. 266 M.D. 2018); *Beaver v. Pa. Dep't of Corr.* (Pa. Cmwlth. No. 272 M.D. 2018).  On May 3, 2018, this Court granted the Department's application to stay the above-captioned proceedings pending the outcome of this case.  On May 22, 2018, O'Toole objected to the Court's stay order, claiming that he cannot adequately represent other inmates' interest, and "by taking this action[,] the Court has put a 'BULLS EYE' on [his] back."  O'Toole Obj. to Stay of Proceedings in Similar Litigation at 1.  On May 30, 2018, the Court nevertheless "confirmed" its May 3, 2018 Order.  May 30, 2018 Order.

3

preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom.[5] It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted).

In the Petition, O'Toole asserts:

5. . . . These boots are being confiscated without a pre[-]deprivation hearing in violation of [Section 101 of the Administrative Agency Law,] 2 Pa.C.S. § 101, and the [Department's] own policy DC[-]ADM 815. ([C]opy attached).

6. Private property cannot be taken by the government without due process. What process is due, at a minimum, to one who has lost property via the action of a Pennsylvania [s]tate [a]gency is addressed under Administrative Agency Law. [Section 101] of the Administrative Agency Law defines an 'adjudication' as any decision by an agency affecting property rights. The decision to confiscate my boots by the [Department], without my consent, is an adjudication under this definition.

. . . .

8. These boots are also being confiscated in violation of the [Department's] own policy and procedures, DC[-]ADM 815, which states[:]

DC[-]ADM 815, pg. 2/3, par[a]g. 6. Exceptions.

---

[5] "[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.,* 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

4

a. An inmate will be permitted to keep no longer permitted items, as long as the items were noted on [his] [I]nmate[] . . . Personal Property Inventory form. . . [.] ([C]opy attached).

9. These boots were chosen by the [Department], the only boots available for purchase, and sold to me by the [Department] at a profit, for $92.65. ([M]aster [C]ommissary list attached).

10. The [Department] has a duty to follow [its] own policy and procedures, in the instant matter DC[-]ADM 815, and ergo I [have] a right to keep my personal property.

11. The [Department] has a duty, and I [have] a right, to a pre[-]deprivation hearing before confiscation of personal property pursuant to [Section 101 of the Administrative Agency Law].

12. [O'Toole] has no adequate remedy at law, and will suffer irreparable [sic] harm if an emergency injunction is not issued in time.

13. [O'Toole] contends that if granted, the [m]andamus order can be enforced.

WHEREFORE, [O'Toole] request[s] this Honorable Court grant an [i]njunction to stop confiscation of personal property before May 11, 2018, enter an [o]rder of [m]andamus directing [the Department] to follow DC[-]ADM 815 and allow me to keep my boots and/or to give me a pre[-]deprivation heari[n]g . . . , and/or to reimburse me $92.65 for the loss of property, and/or the remedy the Court finds lawfully appropriate.

Petition at 2-3.

## Due Process

Initially, Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "Due process under the Pennsylvania Constitution emanates from a number of

5

provisions, including Article I, Sections 1, 9, and 11." *Muscarella v. Commonwealth*, 87 A.3d 966, 973 (Pa. Cmwlth. 2014). Article I, Section 1 of the Pennsylvania Constitution, Pa. Const. art. I, § 1, similarly protects life, liberty and property interests.[6] Article I, Section 9 of the Pennsylvania Constitution provides, in pertinent part, that a person shall not be "deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." Pa. Const. art. I, § 9. Article I, Section 11 of the Pennsylvania Constitution states, in relevant part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law[.]" Pa. Const. art. I, § 11.

### 1. Protected Property Right

"In order to establish that the [Department] violated his Fourteenth Amendment right to due process, [**O'Toole**] **must establish that he has been deprived of** life, liberty and **property without due process of law**. *See* U.S. Const. Amend. XIV, § 1." *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999) (emphasis added). However, this Court is mindful that

> [p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens. As the *Robson* [*v. Biester*, 420 A.2d 9 (Pa. Cmwlth. 1980) C]ourt observed, 'incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' [*Id.*] at 13 (citing *Price v. Johnston,* 334 U.S. 266 . . . (1948)).

*Bronson v. Cent. Office Review Comm.*, 721 A.2d 357, 359 (Pa. 1998).

---

[6] Article I, Section 1 of the Pennsylvania Constitution states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

Relying upon this Court's decision in *Orozco v. Pennsylvania Department of Corrections* (Pa. Cmwlth. No. 268 C.D. 2013, filed January 14, 2014), the Department asserts that O'Toole has no property right in his Timberland boots and, thus, due process is not required. *Orozco* was based upon an April 14, 2011 Department memorandum[7] issued to Pennsylvania inmates temporarily housed in a Michigan facility[8] informing them that they were authorized to bring back to Pennsylvania only those personal items obtained in Michigan, including boots, then available in the Pennsylvania prison commissaries. The inmates were instructed to destroy, consume or ship to their families all non-compliant personal items before they returned to a Pennsylvania facility. Upon the inmates' return to Pennsylvania, Department officials confiscated their non-compliant personal items. The inmates filed complaints seeking replacement or compensation for the confiscated items. As in the instant matter, the Department objected because the inmates had no constitutional right to possess the confiscated property. The trial court consolidated the cases and sustained the Department's Preliminary Objections. This Court affirmed the trial court's decision on the basis that the Department employees' purportedly wrongful confiscation was an intentional tort for which they enjoyed sovereign immunity.

Although Orozco's complaint did not specifically include a constitutional property right claim, he argued on appeal that it did, and the Court considered that claim to the extent it was encompassed therein. The Court ruled that "[t]he Department had wide discretion to adopt a new policy in order to [specifically address property transferred with inmates from out-of-state],"[9] and the enforcement

---

[7] Despite that the *Orozco* Court referred to the Department's document as a bulletin, it was a memorandum like the one the Department distributed on March 26, 2018 in this case.

[8] Orozco was housed in Michigan from March 2009 to May 2011.

[9] Although DC-ADM 815 authorized inmates transferred among intrastate facilities to keep items listed on their property forms, it did not address transfers from out-of-state facilities.

7

of that policy did not violate the affected inmates' constitutional rights. *Id.* slip op. at 6. The *Orozco* Court reasoned:

> Prison administrators are afforded wide-ranging deference in their adoption and enforcement of policies that are necessary to preserve order, discipline and security in prisons. *Dehart v. Horn,* 694 A.2d 16, 19 n.9 (Pa. Cmwlth. 1997). A prison authority's adoption of policies and practices creates neither rights in inmates nor a constitutionally[-]protected interest triggering the inmates' due process protection. *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Weaver v. Pa. Dep't of Corr.,* 829 A.2d 750, 753 (Pa. Cmwlth. 2003); *Bullock v. Horn,* 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998). A prison regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89 (1987).
>
> In *Small v. Horn, . . .* 722 A.2d 664 ([Pa.] 1998), inmates argued that the Department's policy of restricting their purchase of garments and requiring removal of all non-conforming apparel from the prison without just compensation deprived them of their constitutional property rights. In rejecting the argument, our Supreme Court stated:
>
>> Because of the unique nature and requirements of the prison setting, imprisonment 'carries with it the circumscription or loss of many significant rights . . . to accommodate a myriad of institutional needs . . . chief among which is internal security.' *Hudson v. Palmer,* 468 U.S. 517, 524 . . . (1984). Accordingly, **the Department must enforce reasonable rules of internal prison management to ensure public safety and prison safety. These rules must be modified as conditions change, different security needs arise**[]**, and experience brings to light weaknesses in current security measures**.
>
> [*Small*] . . . , 722 A.2d at 669-70. The Court noted that other courts had recognized that '**reasonable prison regulations regarding the** quantity and **type of property that inmates may possess do not violate due process guarantees**.' *Id.* at . . . 671. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 554 (1979) (holding that prisoners' due process

8

rights with respect to possession of property are not absolute and are subject to reasonable limitations); *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991) (finding no deprivation of property rights where a prisoner's property was sent to an address of his or her choice).

. . . .

The Department's bulletins [(*i.e.*, memoranda)[10]] 'embody decisions that are inherently committed to the agency's discretion.' *Small, . . .* 722 A.2d at 670. The April 14, 2011 bulletin is reasonably related to the Department's legitimate penological interest of maintaining order, discipline and security in the prison.

*Orozco* slip op. at 4-7 (emphasis added).

O'Toole responds that the Department's Preliminary Objections should be overruled because *Orozco* is factually distinguishable, the Department's March 26, 2018 policy was not properly implemented, and the Department failed to state how Timberland boots impair its ability to maintain safety and order.

Despite that *Orozco* is unreported and may not be cited as binding precedent, it may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). Although the facts underlying the *Orozco* decision differ from the instant case, given the accurate summary of law regarding Department policy changes related to inmate rights in personal property, this Court agrees with the Department that *Orozco* is persuasive here.

The law is well-settled that the **Department has broad discretion to fashion policies about what property inmates may possess, and to modify those policies as security needs evolve or change**. *See Small*; *Dehart*. Section III of DC-ADM 815 Policy Statement (Policy) reflects: "It is the policy of the Department to

---

[10] The documents in dispute in *Small* were not memoranda but bulletins that expressly amended the Manual and were correspondingly numbered.

9

ensure . . . inmates are provided the opportunity to purchase a reasonable variety of items in addition to those furnished by the facility[.]" Policy at 1. Until March 2018, among the variety of items available for inmate purchase were Timberland and Rocky boots. However, Section VI of the Policy warns that the DC-ADM 815 "does not create rights in any person . . . ." Policy at 2. Moreover, Section III of the Policy declares that "limitations on the . . . variety of inmate property may be imposed for security . . . and/or safety reasons[.]" Policy at 1. Section 2.A.4.f of the DC-ADM 815 Procedures Manual (Manual) expressly authorizes the Department's Eastern and Western Regional Deputy Secretaries to approve requests to discontinue "sales of specific item[s] in the [a]pproved CI [c]atalog [that] may create a problem" at the Department's facilities. Manual at 2-2.

According to the Department, the March 26, 2018 "policy change occurred after the [widely-covered] February 2018 death of a Department corrections[] officer who had been kicked in the head by an inmate wearing Timberland-style boots." Department Br. at 9 n.1. The Department did not include this reasoning in the March 26, 2018 memorandum.[11] However, the *Orozco* Court deemed valid the policy memorandum therein despite that it likewise did not notify inmates of the specific safety concern underlying the policy. Moreover, the Pennsylvania Supreme Court, in *Small*, upheld the Department's 1997 revocation of its policy permitting general population inmates to wear civilian clothing (supplied by family members or purchased from approved third-party vendors) after civilian

---

[11] O'Toole contends that the Department "ha[s] made no claim of how [his Timberland] boots impair the ability of maintaining order, . . . impair [the Department's] ability [to] administer[] discipline, or after over ten years of sale[], with no change to design or material, the only boots they [sic] choose [sic] and approved for sale[] are now a security risk." O'Toole Ans. to Prelim. Obj. at 3. However, O'Toole offers no basis for his claim that the Department must specify to inmates a safety reason for the policy change.

clothing played a role in a prison escape the month before. Finally, the *Small* Court ruled, relative to an equal protection argument:

> [T]he freedom to wear civilian clothes while incarcerated is not a fundamental right. Therefore, the [policy change] need only pass the rational basis test. Under this test, the government need not have articulated the purpose or rationale supporting its action; it is enough that some rationale 'may conceivably . . . have been the purpose and policy of the relevant governmental decision maker.' *Nordlinger v. Hahn,* 505 U.S. 1, 15 . . . (1992)[.]

*Small*, 722 A.2d at 672. Certainly, an inmate's potential use of Timberland or Rocky boots as a deadly weapon against Department staff is a rational safety reason for the Department's Regional Deputy Secretaries and their supervising Executive Deputy Secretary for Institutional Operations to change the Department's boot-style policy without specifying to the inmates the reason therefor.

O'Toole asserts that his property right in his Timberland boots stems from the fact that the boots "were chosen by the [Department, were] the only boots available for purchase, and [were] sold . . . by the [Department] at a profit[.]" Petition ¶ 9. This Court acknowledges that the Approved Master Commissary List attached to the Petition reflects that Timberland men's leather boots were included among the commissary items available for purchase. *See* Petition Attachment 5 (Approved Master Commissary List, page 11 of 15). In addition, O'Toole's March 9, 2010 Form DC-153 (Inmate Personal Property Inventory) shows that he possessed one pair of Timberland boots as of that date.[12] *See* Petition Attachment 3. However,

---

[12] O'Toole's argument that DC-ADM 815 Section 2.6.a authorizes him to retain his personal items because they were listed on his Form DC-153 fails. *See* Petition ¶ 8. Section 2.6.a of DC-ADM 815 states: "An inmate will be permitted to keep no-longer-permitted items, as long as the item(s) were noted on the inmate's [Form DC-153] as of the effective date of the previous DC-ADM 815, dated May 12, 2008." Manual at 2-3 (emphasis omitted). Because the Department's boot policy was not effective and O'Toole's Form DC-153 was not completed before May 12, 2008, DC-ADM 815 Section 2.6.a does not apply in this instance.

despite that Timberland boots were previously authorized for commissary purchase, and O'Toole may own a pair, neither the Manual nor any Department regulation expressly authorizes inmate purchase and/or possession of Timberland or Rocky boots. Even assuming, arguendo, that the Manual specifically authorized Timberland and Rocky boots, the Policy disclaimer that DC-ADM 815 "does not create rights in any person," Policy at 2, and Section III of the Policy that "limitations on the. . . variety of inmate property may be imposed for security . . . and/or safety reasons", Policy at 1, "is sufficient to dispel any reasonable expectation that an enforceable right [was] created by the [Department's] [previous] policy." *Weaver v. Pa. Dep't of Corr.*, 829 A.2d 750, 753 (Pa. Cmwlth. 2003).

In addition, the Department is authorized to make internal policy changes by memorandum as it did in this instance.[13] *See Orozco*. In *Small*, the Supreme Court ruled that "the Department's authority to make rules concerning the management of [SCIs] can fairly be implied from its enabling statute." *Id.* at 669. The *Small* Court further held that the Department's bulletins are not regulations and do not amend existing regulations, "but instead embody decisions that are inherently committed to the [Department's] discretion[.]" *Id.* at 670. The *Orozco* Court extended the *Small* Court's reasoning about Department bulletins to Department memoranda like the one issued herein. *See Orozco*, slip op. at 6 (*i.e.*, the memoranda too "are inherently committed to the [Department's] discretion." (quoting *Small*, 722 A.2d at 670)).

---

[13] O'Toole asserted in the Petition that the Department failed to follow its policies and procedures relative to DC-ADM 815. In his answer to the Preliminary Objections, O'Toole specified that the new boot policy "does not comport with the Department's Policy Management Systems Procedures Manual" Section 1.1.1.D (relative to needs assessments preliminary to policy changes policy). Ans. to Prelim. Obj. ¶ 9. However, the Department's policy changes are clearly internal processes, and there is nothing on the face of the Petition that, even if accepted as true, would establish that the Department violated its policy adoption process before it distributed its March 26, 2018 memorandum.

Based upon the facts O'Toole alleged in his Petition, the Department exercised its discretion based on security concerns and properly changed a pre-existing, discretionary policy. "[D]epartment directives specify exactly what personal property may be possessed or purchased either in the prison commissary or through outside sources. *See* DC-ADM 815." *Bronson*, 721 A.2d at 359-60. Under the Department's new policy, "[p]rison inmates do not have the right to possess [Timberland or Rocky boots]. . . . In light of the limitations placed on inmate possession of personal property by the [D]epartment, [O'Toole's] claim that his protected constitutional rights have been violated fails." *Id.* Because O'Toole does not have a constitutionally-protected right to possess his Timberland boots, he cannot demonstrate a valid property interest for which due process was triggered by the Department's March 26, 2018 memorandum.[14]

---

[14] In making their arguments to this Court, both parties cite to *Turner*, wherein the United States Supreme Court ruled that even if a prison regulation impinges on an inmate's constitutional rights, the regulation can nevertheless be valid if several factors are met.

> *Turner* specifically directed courts to assess: (1) whether there is a 'valid, rational connection' between the prison regulation and the legitimate governmental interest asserted to justify it; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the asserted constitutional right will have on guards, inmates, and prison resources; and, (4) whether there are 'ready alternatives' to the rule that would accommodate prisoners' rights at *de minimus* [sic] cost to penological interests.

*Brittain v. Beard*, 974 A.2d 479, 486 (Pa. 2009) (quoting *Turner*, 482 U.S. at 89-91). However, *Turner* involved *regulations* promulgated by the Missouri Division of Corrections. At issue here is a boot *policy* rather than a regulation. *See Small*; *Orozco*. Moreover, based on the Court's holding herein that the policy does not impinge on any constitutional rights in the first instance, this Court need not further apply the *Turner* factors.

Notwithstanding, the Pennsylvania Supreme Court has specifically ruled that "where a prisoner's property is sent to an address of his choice, no deprivation of property has taken place because, although the prisoner no longer has possession of the property, he still retains control over it." *Small*, 722 A.2d at 671. Thus, even if O'Toole could establish a protected property right in his Timberland boots, not all of the factors would be met, since the Department's March 26, 2018 memorandum expressly allowed him to mail them out of the SCI. The fact that O'Toole is serving

## 2. Adjudication

"It is well settled that procedural due process concerns are implicated only by adjudications, not by state actions that are legislative in character." *Small*, 722 A.2d at 671. Section 101 of the Administrative Agency Law defines "adjudication" as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights . . . of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101. "Unless 'an inmate can identify a personal or property interest . . . not limited by [Department] regulations and which has been affected by a final decision of the [D]epartment[,]' the decision is not an adjudication subject to the court's review." *Bronson*, 721 A.2d at 359 (quoting *Lawson v. Dep't. of Corr.,* 539 A.2d 69, 71 (Pa. Cmwlth. 1988)). Ultimately, "[w]here no right, privilege or immunity of a person is in jeopardy, an agency's action does not constitute an adjudication." *In re Malehorn*, 106 A.3d 816, 819 (Pa. Cmwlth. 2014), *aff'd in part sub nom. Frasconi v. Dep't of State, Bureau of Comm'ns, Elections, & Legislation*, 111 A.3d 167 (Pa. 2015). Here, because the Department's March 26, 2018 memorandum did not affect a right or privilege, it "was not an adjudication, [and O'Toole] cannot succeed on a procedural due process theory." *Small*, 722 A.2d at 671; *see also* 2 Pa.C.S. § 101.

## Right to Relief

In the Petition, O'Toole seeks mandamus and injunctive relief.

> [M]andamus is an extraordinary writ designed to compel performance of a ministerial act or mandatory duty where **there exists a clear legal right in the petitioner**, a corresponding duty in the respondent, and want of any other

---

a life sentence without parole does not change the fact that he would still retain control over his boots.

adequate and appropriate remedy. Mandamus is not available to establish legal rights, but is **appropriate only to enforce rights that have been established**.

*Stodghill v. Pa. Dep't of Corr.*, 150 A.3d 547, 551 (Pa. Cmwlth. 2016), (quoting *Wilson v. Pa. Bd. of Prob. & Parole*, 942 A.2d 270, 272 (Pa. Cmwlth. 2008) (citations omitted)), *aff'd,* 177 A.3d 182 (Pa. 2018). "Mandamus is not used to direct the exercise of judgment or discretion of an official in a particular way." *Clark v. Beard*, 918 A.2d 155, 159 (Pa. Cmwlth. 2007). Therefore, this Court is prohibited from directing the Department to change its discretionary boot policy or carry it out in a particular manner.

"To prevail in an action for injunction, a party **must [likewise] establish that his right to relief is clear**, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Buehl v. Beard*, 54 A.3d 412, 419-20 (Pa. Cmwlth. 2012) (emphasis added), *aff'd,* 91 A.3d 100 (Pa. 2014). As in a mandamus action, O'Toole must, at a minimum, be able to establish a viable due process claim in order to obtain injunctive relief. In *Myers v. Pennsylvania Department of Corrections* (M.D. Pa. No. 1:18-CV-00940, signed June 22, 2018), the United States District Court for the Middle District of Pennsylvania dismissed an inmate's complaint filed pursuant to Section 1983 of the United States Code, 42 U.S.C. § 1983 (Section 1983 claim), *inter alia*, for failure to state a viable injunctive relief claim prohibiting the Department from taking his Timberland boots without compensation. Although the inmate's arrangements for his boots rendered the injunction claim moot, the court nevertheless declared that if that were not the case, the inmate would not be entitled to injunctive relief since (despite the Department's declaration that no boot refunds would be issued) monetary damages *could* fully compensate the inmate for his loss. We find *Myers* persuasive in that, if O'Toole met the other requirements, he still would not be entitled to injunctive relief because he may have money damages

15

available to him.[15] However, because O'Toole does not have a property right subject to due process protection, he cannot establish any clear legal right to relief and, thus, this Court is precluded from granting him mandamus or injunctive relief.

## Conclusion

Accepting as true all of the Petition's well-pled allegations and inferences reasonably deduced therefrom, it "appear[s] with certainty that the law will not permit recovery." *Torres*, 997 A.2d at 1245. Because O'Toole has not articulated any factual or legal basis to support his due process claim, the Department's Preliminary Objections are sustained, and O'Toole's Petition is dismissed with prejudice.

_____
ANNE E. COVEY, Judge

---

[15] "'Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value.' Unreported federal court decisions may also have persuasive value." *Nagle v. Trueblue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016) (quoting *GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 n.15 (Pa. Cmwlth.), *aff'd*, 152 A.3d 983 (Pa. 2016)).

16

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian O'Toole,                                :
                    Petitioner        :
                              :
          v.                            :
                              :
Pennsylvania Department          :
of Corrections,                          :    No. 228 M.D. 2018
                    Respondent     :

## O R D E R

AND NOW, this 16th day of October, 2018, the Pennsylvania Department of Corrections' Preliminary Objections to Brian O'Toole's (O'Toole) Petition for Review (Petition) are sustained and O'Toole's Petition is dismissed with prejudice.

_____
ANNE E. COVEY, Judge