[J-117-2019] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| KELVIN SUTTON AND CLIFFORD SMITH, ON BEHALF OF THE INMATE GENERAL POPULATION, S.C.I. FRACKVILLE | : : : : : : | No. 4 MAP 2019<br><br>Appeal from the Commonwealth Court Order at No. 314 MD 2018 dated November 28, 2018. |
| v. | : : : : : | |
| TABB BICKELL, MICHAEL WENEROWICZ, AND THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS | : : : : : : : | |
| APPEAL OF: KELVIN SUTTON | : | SUBMITTED: November 20, 2019 |

**DISSENTING OPINION**

JUSTICE WECHT                              DECIDED: November 20, 2019

The Department of Corrections may very well have an entirely sound and legitimate reason for implementing a policy prohibiting inmates' possession of Timberland and Rocky boots. But courts are not supposed to jump the gun. As a matter of law, because Appellants have raised a colorable claim that the challenged policy is unconstitutional under *Turner v. Safley*, 482 U.S. 78 (1987), dismissal on preliminary objections was premature. Undoubtedly, there is a substantial likelihood that the Department's policy ultimately will be upheld. But controlling precedents disfavor precipitate termination of this action now based on early assumptions, projections, or presumptions. The proper course is to remand this case in order to allow for the development of a factual record sufficient to dispose of Appellants' claim.

In *Turner*, the Supreme Court of the United States developed a standard for assessing the constitutionality of regulations that burden the fundamental constitutional rights of prison inmates. Although the Court recognized the need to afford deference to the decisions of prison authorities, and although the Court articulated a standard far less demanding than a strict scrutiny test, the Court nonetheless instructed that lower courts "must take cognizance of the valid constitutional claims of prison inmates," because "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Id.* at 84. Drawing upon its precedents in this area, the Court held that, in order to assess the validity of a challenged regulation, a court should inquire as to "whether a prison regulation that burdens fundamental rights is 'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." *Id.* at 87; *see* Maj. Op. at 6-9.

The *Turner* Court articulated four factors to be addressed in connection with this inquiry. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). The second factor is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Fourth, where "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," a claimant's establishment of "obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* Clarifying this final factor, the Court cautioned that it is not a "least restrictive alternative" test, and stated that prison officials need not consider and reject every conceivable means to accommodate an asserted right. *Id.* "But if an inmate

claimant can point to an alternative that fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

Here, the challenged policy placed a restriction upon inmates' right to possession of their property, specifically the Timberland or Rocky boots that, Appellants assert, they purchased lawfully from the prison commissary. It hardly seems an answer to assert, as the Commonwealth Court did, that, due to the very policy now subject to challenge, inmates have no constitutional right to possess Timberland or Rocky boots.[1] Inmates undisputedly retain property rights in certain items that Department regulations permit them to possess, including items those inmates purchase through the prison commissary. It begs the question to conclude summarily that a challenge to a right-limiting policy cannot prevail because the policy's effect is to limit property rights in the chattel that the policy contemplates. That is a circular rationale. The issue is not choice of footwear. The issue is a claim of property rights. The question is whether the challenged policy is valid in the first instance.

There can be no question that prison safety is a paramount concern. The Department of Corrections is entitled to substantial deference in its assessment of potential security risks. Nonetheless, prison safety is not a talismanic, blanket justification

---

[1] *See Sutton v. Bickell*, 314 M.D. 2018, Memorandum and Order at 2 (Pa. Cmwlth. 2018) (*per curiam*) (citing *O'Toole v. Pa. Dep't of Corr.*, 196 A.3d 260 (Pa. Cmwlth. 2018) ("Petitioners do not have a constitutionally protected right to possess Timberland boots and therefore cannot establish a property interest for which due process was triggered."); *see also O'Toole*, 196 A.3d at 269 (quoting *Bronson v. Central Office Review Committee*, 721 A.2d 357, 359-60 (Pa. 1998); bracketed material in original) ("Under the Department's new policy, '[p]rison inmates do not have the right to possess [Timberland or Rocky boots] . . . . In light of the limitations placed on inmate possession of personal property by the [D]epartment, [O'Toole's] claim that his protected constitutional rights have been violated fails.' Because O'Toole does not have a constitutionally-protected right to possess his Timberland boots, he cannot demonstrate a valid property interest for which due process was triggered by the Department's March 26, 2018 memorandum.")

for any and all restrictions upon the rights of inmates. If it were, judicial review would not exist in the prison context at all.

The Department's decision to identify "contraband" boots exclusively by brand name, rather than by any specific feature or characteristic that renders these particular name brands especially dangerous, raises a question as to whether there exists a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89. Accordingly, at this opening stage of the litigation, Appellants have raised a sufficiently colorable argument that the Department's policy does not satisfy the reasonable relationship standard of *Turner*.[2]

It may very well be that discovery or other proceedings will reveal something uniquely dangerous about boots labeled with the brand names "Timberland" or "Rocky." Perhaps there is some manifestly appropriate reason that the Department of Corrections chose to classify contraband footwear according to its brand name only. We do not know. And, at this point, we have no way of knowing. The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005). Any doubt must be resolved in favor of overruling the demurrer. *Id.* The Commonwealth Court's decision to sustain the Department's demurrer terminated this litigation before any relevant facts could be developed.

At this juncture, and on this undeveloped record, our law does not permit us automatically to assume the existence of a reasonable relationship between a specific brand name of footwear and a legitimate security concern. Under these circumstances,

---

[2] *See* Answer to Preliminary Objections, 11/9/2018, at 3 (arguing that the Department's actions under the challenged policy were "arbitrary and capricious, and not in accord with the criteria set[ ]forth and required under *Turner*[, 482 U.S.] at 89-91.") (capitalization modified); Brief for Appellants at 3 (arguing that the policy presents "clear instances of an 'exaggerated response' within the meaning of *Turner*").

a reviewing court must concede some measure of doubt as to whether the law—particularly as articulated in *Turner*—says with certainty that no recovery is possible. Accordingly, dismissal of this matter on preliminary objections was premature. Such disposition may prove entirely appropriate at a later stage, such as summary judgment.[3] At this point in the proceedings, I would feel bound to reverse the Commonwealth Court's order sustaining the Department's demurrer.

I respectfully dissent.

---

[3] *See generally Brittain v. Beard*, 974 A.2d 479, 485-88 (Pa. 2009) (applying the *Turner* standard in the summary judgment context); *Payne v. Pa. Dep't of Corr.*, 871 A.2d 795, 810-11 (Pa. 2005) (same).