IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chikuyo Bayete,             :
        Petitioner     :
                :
      v.           :   No. 20 M.D. 2024
                :   Submitted: February 4, 2025
Pennsylvania Department of     :
Corrections and Secretary Dr.     :
Laurel R. Harry,           :
        Respondents   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
        HONORABLE STACY WALLACE, Judge (P.)
        HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: April 11, 2025

Before the Court is the Preliminary Objection in the nature of a demurrer (PO) of the Pennsylvania Department of Corrections (Department) and Secretary Dr. Laurel R. Harry (Secretary) (together, Respondents) to the pro se Petition for Review (Petition) filed by Chikuyo Bayete (Petitioner) in this Court's original jurisdiction. Upon review, we sustain Respondents' PO and dismiss the Petition.

## I.   THE PETITION

Petitioner filed the Petition, in which he "invoke[d] this Court's original jurisdiction pursuant to [Sections 761-764 of the Judicial Code,] 42 Pa.C.S. §§ 761-764, . . . as review of a state agency's final order is sought . . . ." (Petition at 1.) The Petition alleges the following facts. "Petitioner filed grievance number 1056425 in

the State Corrections [(sic)] Institution Forest" "with respect to ViaPath Technologies – dba – GTL's [(GTL)] ability to confiscate commissary purchased digital currency called 'link-units' without compensation or due process." (Petition ¶ 1.) Petitioner's "media was taken" without notice on September 21, 2023, and, on October 5, 2023, "[R]espondents were put on notice that [GTL,] a company that [they] contracted to service and supply the prison populace . . . had 'restricted' media/music without any [prior] notice." (*Id.* ¶ 2.) The response to the grievance, issued "on October 27, 2023[,] stat[ed] that 'all music' by the [l]abel 'HSC Jmeanmug' at all State Correctional Institutions . . . [was] restricted due to security concerns, and that there [would] be no refunds provided for media restricted by the Department . . . ." (*Id.* ¶ 3 (some alterations added).) "[R]espondents directed [P]etitioner to refer to memos written by [GTL] and a subsequent memo that had been generated after the grieved issue by the [Department]." (*Id.*) Petitioner appealed the denial of the grievance, and the Facility Manager "upheld the no refund policy at the behest of the direction of [the Department's] Central Office." (*Id.* ¶ 4.)

Petitioner sought further review by Respondents. (*Id.* ¶ 5.) During that review, it was discovered that GTL indicated it restricted the music due to its content, not due to any restriction imposed by Respondents, and that the tracks at issue were made by a "bootleg artist." (*Id.* ¶¶ 5-6.) Petitioner's grievance documents, attached to the Petition, reflect, however, that the Department directed confiscation of the music on September 21, 2023, GTL did so on that date, and in its September 25, 2023 response to Petitioner's complaint, GTL indicated the confiscation was due to "content" and it was required to "restrict" the music and no refund would be given per its contract with the Department. (Petition, Exhibits Attached.[1]) Petitioner

_____

[1] Petitioner did not label his exhibits. This material is found at pages 8, 10, and 14 of the Petition.

alleges that GTL was "selling prisoners stolen music [and] then taking the music back without just compensation." (*Id.* ¶ 6.) Petitioner advised Respondents, in December 2023, that the sale of unlicensed and illicit music violated the federal copyright laws, particularly Section 43 of the Lanham Act, 15 U.S.C. § 1125. (*Id.* ¶¶ 6, 18.) In the Final Review decision, "[t]he Secretary's Office . . . [indicated] that GTL (an outside company) made all inmates aware in April of 2020 that [for] media items restricted by the [Department], the inmate will not be refunded for said restricted items." (*Id.* ¶ 7.) The April 2020 notice further indicated that if it was GTL that restricted the items, GTL would refund the inmate for the restricted item. (*Id.*, Exhibit Attached.[2])

Petitioner asserts that Respondents are without power to allow GTL, or other third parties, "to create [a] policy that subverts DC-154(A) (Confiscation of inmate property) without due process" and "overreached [their] authority in permitting []GTL to create policy that permits the [Department] to confiscate digital currency/link units purchased through the Pennsylvania Correctional Industries (PCI) under the guise of 'restricted media.'" (*Id.* ¶¶ 11-12.) Respondents "enlisted GTL to create a notice for the Department []; as relied upon in" the Final Review decision. (*Id.* ¶ 13.) With these policies in place and given "Petitioner's lack of ability to vet media," he cannot "have confidence in purchasing any new music/media," making it the "equivalent of gambling." (*Id.* ¶ 14.) In this instance, "[P]etitioner purchased link units to purchase music and send e-mails out" and this "digital currency was confiscated, in accord with the Final [Review decision], 'due to security concerns.'" (*Id.* ¶ 15.) However, Petitioner contends, he has not been sanctioned or had any civil judgments against him that would "legally allow

---

[2] The April 2020 notice from GTL is found at page 13 of the Petition.

3

[R]espondents to permit GTL to take any physical or digital property purchased through the PCI without due process." (*Id.* ¶ 16.)

Petitioner avers that Secretary "is responsible for making and creating policy which all prisoners must abide by, not GTL or any other constituency or contractor of the [Department]." (*Id.* ¶ 17.) Here, according to Petitioner, GTL is selling prisoners music that violates federal copyright law, "and [ R]espondents are making large profits from said felonious activity." (*Id.* ¶ 18.) Petitioner alleges that Respondents are covering up this copyright infringement by "creat[ing] a 'security concern' and therefore, prisoners that buy[] music that the [Department] gets a cut from are permitted to state that the [Department] had restricted the track just to keep the ill[-]gotten link units." (*Id.* ¶ 19.) Finally, Petitioner asserts Respondents have a conflict of interest in this matter, in which Petitioner seeks the return of $19.10 in link units, because they "rec[e]ive a kick-back in pr[o]fits; as there exist[s] no Department Policy that subverts the process of DC[-]154(A) confiscation of inmate property[.]" (*Id.* ¶ 20.)[3]

Petitioner closes the Petition with the following:

> 21. This Court is sought to review the final order of [ R]espondents to see if [ R]espondents w[ere] correct in [their] reasoning that the [Department] may arbitrarily restrict a track that [] GTL said they restricted; and the money and property can be confiscated without any due process.
>
> . . . .
>
> **WHEREFORE**, for all the foregoing reasons, [P]etitioner seek[s] review of the final order of the Department . . . by and through

---

[3] We note that Petitioner does not allege that GTL was aware it was selling bootlegged music at the time it sold the music to Petitioner, nor does he allege that the Department was aware that the music at issue was bootlegged when it directed the confiscation thereof for security reasons. Rather, per the allegations, Petitioner advised the Department of the illegality of the music in his December 4, 2023 appeal to final review. (Petition ¶ 7.)

[R]espondents; and prays that this Court issue an Order granting relief in the amount of $19.10 for the confiscated media mentioned above, and also the amount [of] total cost[s] of litigating this proceeding, and any other relief this Court deems appropriate.

(*Id.* ¶ 21, Wherefore clause.)

## II.    THE PO AND RESPONSE

Respondents filed the PO in the nature of a demurrer, challenging the legal sufficiency of the Petition.  Respondents argue the Petition, filed in this Court's original jurisdiction, is legally insufficient because Petitioner expressly indicates he is seeking judicial review of the Final Review decision, which is effectively an appeal.  However, Respondents assert, grievance decisions are not subject to appellate review under well-settled precedent.  (PO ¶¶ 21, 24-25, 28-29.) Respondents further assert precedent establishes that the grievance process is constitutionally adequate and that courts should leave "internal prison operations . . . to the legislative and executive branches, and that prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference."  (*Id.* ¶¶ 26-27 (quoting *Bronson v. Cen. Off. Rev. Comm.*, 721 A.2d 357, 358 (Pa. 1998)).)

Petitioner disagrees that he is invoking the Court's appellate jurisdiction, which he concedes we would not have, and asserts that review of the Final Review decision can be had in the Court's original jurisdiction.  (Petitioner's Answer to the PO ¶¶ 4, 29.)  Petitioner maintains, citing Justice Wecht's concurring statement in *Stockton v. Wetzel*, 228 A.3d 1289, 1290 (Pa. 2020) (Wecht, J., concurring), that the courts "do injustice when [the courts] do not give full consideration to each and every individual that seeks relief from our Commonwealth courts, no matter that individual's incarceration status."  (*Id.* ¶ 24.)  Petitioner notes he is challenging

5

Respondents allowing GTL, an outside entity, to create policy that is inconsistent with the Department's policies on the confiscation of inmate property and asserting that he has been deprived of his property, $19.10 in credits, without due process.

## III. DISCUSSION

When ruling on preliminary objections in the nature of a demurrer, this Court must accept all well-pleaded factual allegations in the petition for review as true, along with any reasonable inferences deducible therefrom. *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). The Court is not bound, however, "by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* "When ruling on a demurrer, a court must confine its analysis to the [petition for review]." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). Preliminary objections should be sustained only where it "appear[s] with certainty that the law will not permit recovery[,] and any doubt should be resolved by a refusal to sustain them." *Neely v. Dep't of Corr.*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003).

Respondents argue that the Petition should be dismissed because the law does not permit recovery here due to the Petition seeking appellate review of the Final Review decision, which is not an appealable decision. This argument is predicated on statements within the Petition in which Petitioner indicates he is seeking review of the Final Review decision. (*See* Petition at 1, ¶¶ 1, 21, Wherefore clause.) Respondents are correct, and Petitioner does not dispute, that this Court does not have appellate jurisdiction over the Final Review decision. *Bronson*, 721 A.2d at 359 ("[T]he [C]ommonwealth [C]ourt does not have appellate jurisdiction under [Section 763 of the Judicial Code,] 42 Pa.C.S. § 763, over inmate appeals of decisions by intra-prison disciplinary tribunals."). Thus, we agree that if the Petition

6

was an attempt to appeal the Final Review decision, we would lack appellate jurisdiction.

However, as *Bronson* notes, actions seeking review of Department actions and decisions may be filed in this Court's original jurisdiction under certain circumstances. *Id.* at 359. Notwithstanding the statements suggesting that the Petition seeks appellate review, it also indicates that Petitioner is invoking the Court's original jurisdiction. (Petition at 1.) The Court has original jurisdiction to consider some Department decisions if "an inmate can **identify a** personal or **property interest** . . . not limited by Department regulations and which **has been affected** by a final decision of the [D]epartment." *Bronson*, 721 A.2d at 359 (quoting *Lawson v. Dep't of Corr.*, 539 A.2d 69, 71 (Pa. Cmwlth. 1988)) (emphasis added). Petitioner alleges that he has a property interest in the $19.10 in link units used to purchase music through the Department's own PCI that were confiscated without due process when the music was removed and no refund given based on a policy that was not developed by Respondents. This policy, Petitioner avers, benefits Respondents because it allows GTL to unlawfully sell unlicensed music to prisoners, from which the Department gets a portion of the proceeds, and then prohibit refunds for the music Respondents restrict.

Although Respondents' main argument in its PO is that the Petition is an improper attempt to appeal the Final Review decision, they also assert that its "grievance process is constitutionally adequate" and this matter involves a security issue that should be free from judicial interference. (PO ¶¶ 26-27; Respondents' Brief at 12-13 (citing *Bronson*, 721 A.2d at 358; *Brown v. Wetzel* (Pa. Cmwlth., No. 318 M.D. 2015, filed Sept. 9, 2016)).) These reasons can be applied to argue that an original jurisdiction claim based on a denial of due process, like the one here, is

7

legally insufficient because the process given, the prison grievance system, is constitutionally adequate.

Petitioner avers that his personal property was confiscated without due process. Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1. "Due process under the Pennsylvania Constitution emanates from a number of provisions, including [a]rticle I, [s]ections 1, 9, and 11." *Muscarella v. Commonwealth*, 87 A.3d 966, 973 (Pa. Cmwlth. 2014). Article I, section 1 of the Pennsylvania Constitution, PA. CONST. art. I, § 1, likewise protects life, liberty, and property interests.[4] Article I, section 9 of the Pennsylvania Constitution provides, in pertinent part, that a person shall not be "deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." PA. CONST. art. I, § 9. Article I, section 11 of the Pennsylvania Constitution states, in relevant part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law[.]" PA. CONST. art. I, § 11.

"[T]o establish that the [Department] violated his Fourteenth Amendment right to due process, [**Petitioner**] **must establish that he has been deprived of** life, liberty and **property without due process of law**." *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999) (citing U.S. CONST. amend. XIV, § 1) (emphasis added). We are mindful, however, that

> [p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens. As the *Robson* [*v.*

---

[4] This constitutional provision states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

*Biester*, . . . 420 A.2d 9 (Pa. Cmwlth. 1980), C]ourt observed, 'incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' [*Id.*] at 13 (citing *Price v. Johnston*, 334 U.S. 266 (1948)).

*Bronson*, 721 A.2d at 359.

"The law is well[ ]settled that the Department has broad discretion to fashion policies about what property inmates may possess, and to modify those policies as security needs evolve or change." *O'Toole v. Dep't of Corr.*, 196 A.3d 260, 267 (Pa. Cmwlth. 2018) (emphasis omitted). This is because the need to "accommodate a myriad of institutional needs" due to "the unique nature and requirements of the prison setting" requires the Department to be able "to enforce reasonable rules of internal prison management to ensure public safety and prison safety." *Small v. Horn*, 722 A.2d 664, 669-70 (Pa. 1998). "These rules must be modified as conditions change, different security needs arise[ ], and experience brings to light weaknesses in current security measures." *Id.* In other words, the Department can alter what an inmate may possess as security needs within an institution change and can prohibit what was once permitted if security needs so require. *O'Toole*, 196 A.3d at 267-68. Thus, there is a serious question as to what type of property interest Petitioner had after the Department concluded the music in question was restricted for security reasons, a decision that was within the Department's discretion as an internal prison matter.[5] *See Bronson*, 721 A.2d at 358-59.

Nevertheless, assuming that Petitioner established an enforceable property right, the type of process due is dependent on the context. *Silo*, 728 A.2d at 399.

---

[5] To the extent Petitioner asserts the security reasons were a guise or cover up, he did not aver that the Department was aware of the alleged illegality of the bootlegged music prior to directing the confiscation of the music. Rather, Petitioner averred he advised the Department of the alleged violation of the Lanham Act in December 2023, months after the confiscation. (Petition ¶ 7.)

Here, Petitioner asserts his property, the $19.10 in link units, was infringed upon when the music purchased from GTL via PCI using those units was confiscated after the Department identified that music as a security risk. Following the confiscation, Petitioner grieved the matter through the prison grievance system but was unsuccessful.

Post-deprivation remedies have long been held to satisfy the due process clause where the situation dictates that the state take immediate action, or it is impracticable to provide any meaningful pre-deprivation process. *Parratt v. Taylor*, 451 U.S. 527, 539 (1981).

> When a prison official confiscates a prisoner's property in an allegedly unauthorized way, whether it be negligently or intentionally, due process requires only the existence of an adequate post-deprivation remedy because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations.

*Shore v. Dep't of Corr*., 168 A.3d 374, 383 (Pa. Cmwlth. 2017) (citing *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984)). The Department's post-deprivation grievance system has long been held to provide constitutionally adequate due process and remedy in matters involving the confiscation of inmate property. *Id.* at 383 (collecting cases).

Here, it is undisputed that Petitioner utilized the grievance process to be heard and to challenge the confiscation of his property. Where an inmate is "afforded meaningful opportunities to respond" and "received written decisions from three different adjudicators within the" Department, a claim for a violation of procedural due process will fail. *Id.* at 385. Although Petitioner may disagree with the results of that process, this does not mean his due process rights were violated. *Id.* Accordingly, we can say with "certainty that the law will not permit recovery" on

10

the Petition.  *Neely*, 838 A.2d at 19 n.4.  Thus, we sustain the PO and dismiss the Petition.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chikuyo Bayete,      :
            Petitioner      :
     :
       v.      :    No. 20 M.D. 2024
     :
Pennsylvania Department of      :
Corrections and Secretary Dr.      :
Laurel R. Harry,      :
          Respondents      :

# **O R D E R**

**NOW**, April 11, 2025, the Preliminary Objection of the Department of Corrections and Secretary Dr. Laurel R. Harry to the Petition for Review (Petition) filed by Chikuyo Bayete is **SUSTAINED** in accordance with the foregoing opinion, and the Petition is **DISMISSED**.

_____
RENÉE COHN JUBELIRER, President Judge